**AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**FIDELITY BANK, N. A., Defendant-Appellee.**

No. 80–2058.

United States Court of Appeals, Tenth Circuit.

Oct. 15, 1982.

---

James E. Britton, Oklahoma City, Okl. (Hastie & Kirschner, Oklahoma City, Okl., with him on the briefs), for plaintiff-appellant.

B. J. Rothbaum, Jr., Oklahoma City, Okl. (James A. Kirk and Linn, Helms, Kirk & Burkett, Oklahoma City, Okl., with him on the brief), for defendant-appellee.

Before HOLLOWAY, BREITENSTEIN and LOGAN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this diversity case a Texas insurance company sued an Oklahoma bank for losses incurred through the defalcation of the insurance company's agent. The essence of the claim is that the bank acted improperly by accepting for deposit, in an account of a corporation controlled by the agent, checks bearing unauthorized endorsements. After trial without a jury, the court held that the bank acted in good faith and within reasonable commercial standards of its business and that negligence of the insurance company substantially contributed to the unauthorized endorsements. We affirm the judgment for the bank.

Appellant, American National Insurance Company, is a Texas corporation engaged in the insurance business. It acquired from Fidelity Bankers Life Insurance Company group insurance policies covering the Oklahoma Education Association, the University of Oklahoma and other entities. Fidelity Insurance had used Charles W. Hilliard to administer the insurance program. Hilliard controlled Group Insurance Services, Inc. (GIS).

When American National took over the group insurance, it entered into a handwritten "Memo of Understanding" with Hilliard and GIS, acting by Hilliard, for Hilliard's services "as an Insurance Agent/Broker" and for GIS's performance of "certain insurance service." Subsequently American National sent "Standard Group Insurance Management Agreement[s]" to Hilliard for his signature but they were not returned to American National. Hilliard was aware of their terms which included American Na-

tional's right to make scheduled and unscheduled audits of GIS's books. During the relevant period, American National made no audit and did not compare the payments received with the premiums which should have been collected by GIS.

American National made no formal investigation of Hilliard or GIS; no financial records were required; no credit check was made; and no inquiry was made into Hilliard's former employment. American National knew that Hilliard was indebted to Fidelity Bankers, the former insurer. American National made a written agreement with Fidelity Bankers assigning to Fidelity Bankers the first $45,000 of commissions earned by Hilliard and GIS each month to pay an indebtedness of Hilliard to Fidelity Bankers. American National did not inquire into the nature or amount of the debt which was later estimated to exceed $1,000,000.

American National instructed Hilliard that premium checks were to be payable to American National and forwarded to a Galveston, Texas, bank for deposit. In August, 1974, the first month that premiums were due under the take-over, American National received on account of premiums a single GIS check drawn on defendant Fidelity Bank. In November, 1974, American National instructed Hilliard to deposit premium checks directly into an account at a Dallas, Texas bank. Hilliard had no authority to deposit, endorse, negotiate or otherwise transfer any checks except in accordance with American National's instructions.

Hilliard administered the policies from August, 1974, to November, 1975, when American National terminated his services. In that period over 13,000 premium checks totalling over $5,000,000 were deposited in two bank accounts maintained by Hilliard and GIS in Fidelity Bank. Approximately 280 of the checks deposited in account No. 14–1519, a general corporate account of GIS, bore the following rubber-stamped endorsement:

"AMERICAN NATIONAL LIFE INSURANCE CO.

BY: _____(Signature)_____

FOR DEPOSIT ONLY TO THE ACCOUNT OF
GROUP INSURANCE SERVICES, INC.
ACCOUNT NO. 14–1519."

The checks so endorsed totalled $593,713.15 and represented premiums for September, October, and November, 1975. The mentioned amount was not paid to, or received by, American National.

The pertinent provision of the endorsement agreement covering account No. 14–1519 reads:

"Endorsements for deposit may be evidenced merely by the name of the corporation being written or stamped on the instrument deposited, without designation of the party making the endorsement."

Fidelity Bank did not investigate the authority of Hilliard or GIS to endorse or deposit the checks. American National did not notify Fidelity Bank of its relationship with Hilliard and GIS. When this action was brought, no GIS funds remained in the possession of Fidelity Bank.

After the termination of Hilliard's and GIS's services, an American National investigation disclosed the GIS accounts and the failure to transmit premiums to American National. It then brought this action alleging liability under theories of breach of trust and assumpsit. In defense Fidelity Bank said: (1) Hilliard had apparent authority to endorse and deposit the checks; (2) the Bank, acting in a commercially reasonable manner, had no duty to investigate Hilliard's authority; and (3) the loss was caused by American National's failure to investigate, audit, and supervise.

On Fidelity Bank's motion, District Judge Thompson granted summary judgment on all claims relating to 13,308 checks deposited in the GIS accounts except those made or endorsed payable to American National. The amount of checks so endorsed is $592,717.15. See Memorandum Opinion, R. vol. 1, pp. 145–149. The issues remaining were presented to District Judge West in a nonjury trial. In a Memorandum Opinion, R. vol. III, pp. 554–566, Judge West made com-

prehensive findings of fact and held: (1) Fidelity Bank breached no trust; (2) Fidelity Bank was not liable in assumpsit; and (3) pertinent provisions of the Uniform Commercial Code protected Fidelity Bank from liability. The court entered judgment dismissing the action. On this appeal American National attacks all of the mentioned rulings of the district court.

The fact findings of the trial court are important to consideration of the legal issues raised by American National. The court found, R. vol. III, p. 554 et seq., and particularly at 564, that: (1) American National selected Hilliard and GIS without an investigation of either; (2) American National failed to investigate the suspicious circumstances surrounding Hilliard's indebtedness to his former principal, Fidelity Bankers; (3) the Management Agreement was never executed and its provisions were not enforced; (4) "Hilliard and GIS never for one month followed American National's instructions concerning the procedure for handling insurance premiums;" (5) American National never audited Hilliard's or GIS's books; (6) American National did not "exercise close supervision of its agent's activities;" and (7) after becoming aware of Hilliard's improprieties in August, 1975, "no action was taken to relieve Hilliard of his responsibilities for several months."

The court found, Id. at 565, "as between American National and Fidelity Bank, American National was the party that was in the best position to have prevented the loss and that it failed to exercise care which the ordinarily prudent person would have exercised under the circumstances." The court also said, Id. at 565, "negligence on the part of American National substantially contributed to the making of the unauthorized endorsements by Hilliard and GIS."

Under Oklahoma law, the authority of an agent may be established from appearances or by implication. In *W. R. Grimshaw Co. v. First Nat. Bank & Tr. Co. of Tulsa, Okl.,* Okl., 563 P.2d 117, 121, the court said:

"Although no persons may have relied on any affirmative statement or conduct of the principal . . . in concluding [that the agent] had the authority to endorse and deposit the checks, the operative conduct relied on could have been an omission on the part of [the principal] 'in the exercise of ordinary care and prudence' to be aware of his agent's . . . activities."

See also *Rosser-Moon Furniture Co. v. Oklahoma State Bank,* 192 Okl. 169, 135 P.2d 336, 338. Nothing in the record indicates that Fidelity Bank knew or had reason to know that Hilliard was misappropriating American National funds. See *Black v. O'Haver,* 10 Cir., 567 F.2d 361, 373, a case arising out of Oklahoma.

As adopted in Oklahoma, the Uniform Commercial Code provides, 12A O.S. § 3–406, that:

"Any person who by his negligence substantially contributes to . . . the making of an unauthorized signature is precluded from asserting the . . . lack of authority against . . . a drawee or other payor who pays the instrument in . . . accordance with the reasonable commercial standards of the drawee's or payor's business."

American National's negligence spanned the entire course of its dealings with Hilliard and GIS.

Another Code provision, 12A O.S. § 3–419(3), provides that a depository or bank which has,

"in good faith and in accordance with reasonable commercial standards applicable to [its] business . . . dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

When this suit was brought Fidelity Bank had no such proceeds in its hands.

American National argues that § 3–406 is no defense because Fidelity Bank failed to act in accordance with commercially reasonable standards. Expert evidence was adduced on the commercial standards. On conflicting testimony the trial court held that Fidelity Bank acted "in accordance

with reasonable commercial standards." See R. vol. III, p. 565.

A trial court's findings are binding on appeal unless they are clearly erroneous. F.R.Civ.P. Rule 52(a). The test is "whether the appellate court, after reviewing all the evidence, is left 'with the definite and firm conviction that a mistake has been committed.'" *Reyes v. Hoffman,* 10 Cir., 580 F.2d 393, 394. We have no such conviction. Substantial evidence sustains the trial court. American National's argument that the court applied local, rather than national standards, does not support a reversal. While there was testimony directed to the Oklahoma City banking practice, there was also substantial testimony concerning the banking industry on a national scale. We do not understand the trial court to limit its findings to any local situation in view of its general statement concerning "reasonable commercial standards." R. vol. III, p. 565.

The trial court properly rejected American National's breach of trust argument. Fidelity Bank had no knowledge, either actual or constructive, that a trust existed. See R. vol. III, p. 562; and *Western Assur. Co. v. Genesee Valley Trust Co.,* 2 Cir., 171 F.2d 664, 666. Plaintiff's suggestion that Fidelity Bank should have been aware of the possibility of a trust relation is insufficient to prove a trust.

American National asks the court of appeals to retry the case. Such action would violate the admonition contained in *Zenith Corp. v. Hazeltine,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129, that: "appellate courts must constantly have in mind that their function is not to decide factual issues de novo."

Affirmed.