FIRST CITY NATIONAL BANK OF MIDLAND, Plaintiff-Cross Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORP., As Receiver for the First National Bank of Midland, Defendant-Third Party-Plaintiff-Appellant-Cross Appellee,

v.

H.L. BROWN, Jr., Third Party Defendant-Appellee-Cross Appellant.

H.L. BROWN, Jr., Plaintiff-Appellee-Cross Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORP., As Receiver for the First National Bank of Midland, Defendant-Appellant-Cross Appellee.

No. 85-1128.

United States Court of Appeals, Fifth Circuit.

Feb. 20, 1986.

Michael C. Steindorf, Franklin H. McCallum, Midland, Tex., for FDIC.

Jack Tidwell, Odessa, Tex., for Brown.

C.H. Brockett, Jr., Midland, Tex., for First City Nat'l Bank.

Before RUBIN, RANDALL and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case is the consolidation of two separate actions. First City National Bank of Midland ("First City") brought the first in state district court in Texas against First National Bank of Midland ("First National") for breach of warranty as to the genuineness of an endorsement upon a check paid by First National. After this suit was initiated, First National became insolvent. The Federal Deposit Insurance Corporation ("FDIC") was thereafter appointed as First National's receiver. The FDIC thereupon removed this action to the United States District Court for the Western District of

Texas and then filed a third-party complaint against H.L. Brown, Jr.

Brown initiated the second action by suing the FDIC, as receiver for First National, in the United States District Court for the Western District of Texas. Brown claimed that First National had accepted for deposit on forged endorsements checks payable to him and that First National had also paid checks despite his order to the contrary. The district court determined that these two actions arose out of the same facts and circumstances and that they should be tried together.

This case was tried without a jury and largely on stipulated facts. The district court found for First City in its suit, but ordered recovery against Brown not the FDIC. The district court then, in trying Brown's claims, found that Brown had not been harmed as a result of First National's actions and thus that he could not recover against First National for conversion. The court, however, did find that First National had improperly paid checks after receiving a stop activity order. Brown and the FDIC appeal portions of the district court's judgment.

## I. FACTS

Brown is an independent oil man. He has done business as a sole proprietorship since 1955. One of the most important requirements of Brown's business is that he employ highly qualified professionals. Because such professionals are in great demand in this industry, Brown uses various incentives to retain them for his operations. Brown establishes individual trusts for some of his key employees as one means of providing them additional compensation. The employees' interests in these trusts vest after they have been with Brown for some minimum period of time.

One such trust was established for an employee named J.L. McGill. In 1977, Brown opened an account at First National to receive payments that were to be made to McGill's trust. Brown designated this account as the "H.L. Brown, Jr., Engineers Trust Account" ("trust account"). It was Brown's policy to have his controller serve as trustee for these accounts so Brown authorized his controller, Bill Kubena, as well as himself to write checks on the trust account. Brown also signed a depository contract with First National at that time. When Kubena later left Brown's employ in 1979, Brown authorized his new controller, Gary L. Plake, to write checks on the trust account.

Brown left the task of endorsing and depositing checks made payable to the trust account entirely up to Plake. Brown, however, maintained an established procedure for the endorsement of all checks received that were payable to him personally. He supplied his employees with a rubber stamp to provide his endorsement, and directed his employees to endorse all checks made payable to him only with this stamp. After the checks were endorsed, they were to be taken to the controller who assembled, photocopied, and then mailed the checks to Brown's account at the Fort Worth National Bank.

On September 30, 1980, McGill, the subject of the trust account, left Brown's employ. After McGill had been paid his interest in the trust account, Brown instructed Plake to close the account. Plake did not do so, however. Instead, he set out on a scheme of embezzlement. Plake deposited checks into the trust account that on their face were not payable to the trust account but were payable to H.L. Brown, Jr. Plake endorsed these checks "H.L. Brown, Jr., Trust," "Gary L. Plake" or "H.L. Brown, Jr." These checks were improperly honored by the bank because the trust account was not the payee. Further, Plake was not authorized by Brown to endorse any checks made payable to Brown personally other than by use of the rubber stamp referred to above. After depositing these checks, Plake would write checks on the trust account and withdraw the proceeds for his own purposes and not for the purposes intended by the drawers of the checks.

On January 4, 1983, a check was drawn by Moran Exploration, Inc., on First City in the amount of $24,954.04 and made payable

to H.L. Brown, Jr. After accepting this check for deposit into the trust account upon Plake's improper endorsement, First National stamped the back of the Moran check with the letters P.E.G., indicating that prior endorsements were guaranteed by First National to all subsequent transferees. First National then forwarded the check to First City for payment. First City paid the item and debited Moran Exploration's account accordingly. Plake, thereafter, withdrew $24,954.04 from the trust account along with other monies and embezzled the same for his own purposes.

Through January 31, 1983, Plake had endorsed and deposited checks in the amount of $132,962.11 into the trust account. Plake had embezzled these funds by subsequently writing checks payable to cash or to himself on this account. On February 3, 1983, an overdraft on the trust account of $12,500 appeared. First National notified Plake who instructed the bank that he would immediately make a deposit to cover this amount. Charles Frazier, President of First National noticed, however, that the trust account had been opened five years before, that this check was written on a temporary check form, and that this check was made payable to Plake, signed by him, and endorsed by him. Frazier instructed his secretary, Darlene Mertink, to get in touch with Brown who was at that time in Pebble Beach, California. When advised of the situation by Mertink, Brown returned to Texas and confronted Plake on February 8, 1983. Plake was then discharged.[1]

No written notice was sent by Brown to First National instructing it to terminate Plake's authority with respect to the trust account. Between February 7, 1983, and February 17, 1983, nine additional checks and money orders in the amount of $27,552.78 were honored by the bank on the trust account. Subsequently, $2,000 was transferred from another of Plake's accounts to the trust account so that total

funds in the amount of $25,552.78 were withdrawn from the trust account during those ten days. Brown claims that he had instructed First National, on February 3, 1983, to cease all further activity in the trust account. First National contends that Brown never gave it such an order. First National further contends that even if given such an instruction, it was not bound under Texas law or under its depository contract with Brown because written notice was not provided. This disagreement was the only fact not the subject of a stipulation at trial. In view of the conflict in this evidence, the finding of the district court that Brown did give oral notice must stand.

When Brown had discovered the embezzlement, he made demand upon Moran to issue a new check payable to him in the amount of $24,954.04. Moran acceded to Brown's demand and issued a second check. Using an affidavit prepared by Brown that claimed that the endorsement on the first check had been a forgery, Moran then made demand upon First City to reverse the debit to Moran's account. First City acceded to this demand and then itself made demand upon First National to return the $24,954.04 that First City had previously paid. First National refused.

Upon trial, the district court held that First National had not converted these checks within the meaning of § 3.419 of the Texas Business and Commercial Code ("TBCC") because Brown had constructively received the proceeds of the embezzled checks. The district court, however, did find that Brown had given First National a directive to cease activity with regard to the trust account on February 3, 1983. Although this directive was not in writing as required by § 4.403 of the TBCC and the depository contract, the district court reasoned that First National had failed to act in accordance with reasonable commercial standards in honoring Plake's checks withdrawing funds from the trust account after February 7, 1983.

1. Plake pled guilty to a charge of theft of currency having a value of $10,000 or more and was duly sentenced.

The district court also found that First National had not breached its transferor warranties to First City under § 4.207 of the TBCC. It found that since the proceeds of Moran's first check reached an account that Brown constructively owned, First National had good title to the Moran check and thus properly received payment from First City for it. The district court, however, continued with its analysis and found that Moran nonetheless had suffered a loss as a result of these transactions. Moran's remedy, the court found, lay against Brown, not First National. Because Brown had improperly requested a second payment from Moran as a result of his failure to supervise Plake, the district court ordered him to bear the loss.

The issues in this case are properly reviewed under Texas law. Because we find relatively few Texas cases that are applicable to the facts at hand, however, we have also considered decisions from other jurisdictions interpreting pertinent Uniform Commercial Code provisions. We will deal first with Brown's claims and then with First City's.

## II. BROWN'S CLAIMS

Brown seeks to recover $108,008.07 from the FDIC, as receiver for First National, for the conversion of checks made payable to him. Brown seeks recovery for all of the checks Plake embezzled except the Moran check. Brown has been reimbursed by Moran for this check and, consequently, has suffered no injury with regard to it. Brown also presents an alternate claim to recover the $25,552.78 worth of checks which First National honored after his oral stop order.

■ The parties stipulated that Plake provided forged or unauthorized endorsements to the embezzled checks. A bank has a duty, at its own peril, to authenticate the endorsements on checks presented to it for payment. *Tubin v. Rabin*, 382 F.Supp. 193, 196, supplemented, 389 F.Supp. 787 (N.D.Tex.1974), aff'd, 533 F.2d 255 (5th Cir. 1976). Although § 3.419 in terms refers only to conversion upon "forged" endorse-

ments, it is established that conversion under § 3.419 also takes place when unauthorized endorsements are accepted. *Federal Deposit Insurance Corporation v. Marine National Bank of Jacksonville*, 431 F.2d 341, 344 (5th Cir.1970); *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex. 1984). First National converted the checks deposited by Plake by not inquiring as to the authenticity of Brown's purported endorsements or as to Plake's authority to endorse checks made out to Brown personally as payee.

■ We must reverse the district court's finding that Brown suffered no loss because the checks were deposited into an account which Brown controlled. Brown did not "constructively receive" the proceeds of these checks. "Constructive receipt" is a narrow defense grounded in equity. Generally, it has been applied to prevent a drawer from recovering when he has suffered no loss. *Eatinger v. First National Bank of Lewiston*, 199 Mont. 377, 649 P.2d 1253 (1982); *Tonelli v. Chase Manhattan Bank*, 41 N.Y.2d 667, 394 N.Y. S.2d 858, 363 N.E.2d 564 (1977). This equitable defense not only requires that the rightful payee receive the proceeds of the converted check, but also, and this is critical, that the proceeds of the check be applied to the purpose intended by the drawer. *Id.*

■ Assuming that this equitable defense to conversion was available to a payee, it would not be applicable in this case. Brown was not unjustly enriched. The trust account was established for the benefit of one of Brown's employees. Brown was a trustee. The proceeds of these checks could legally not reach Brown to his personal benefit. But even if it is assumed that the funds did reach Brown beneficially, they certainly were not applied for the purposes intended by the drawers as "constructive receipt" requires. Moreover, Brown believed that the trust account had been closed. The requirements of constructive receipt are not met.

The FDIC argues that Brown's negligent failure to supervise Plake caused First National to pay the embezzled checks. *See* Tex.Bus. & Com.Code § 3.406.[2] The FDIC contends that if Brown had properly managed his own affairs, Plake would not have been able to effect his embezzlement scheme. *Cf. American National Insurance Co. v. Fidelity Bank, N.A.*, 691 F.2d 464 (10th Cir.1982). The district court agreed and found Brown negligent. We need not determine whether this conclusion is supported by the record or is clearly erroneous, or, indeed, what the effect of negligence would be.

█ Section 3.406 provides that any payee who by his negligence substantially contributed to the making of an unauthorized signature is precluded from asserting that lack of authority against a holder or drawer or payor who has paid the instrument in good faith *and in accordance with the reasonable commercial standards of his business.* It is a prerequisite to invoking the negligence of the payee as a defense under section 3.406 that the payor have paid the instrument in good faith and in accordance with those standards. *See, e.g.,* Tex.Bus. & Com.Code § 3.406, comment 6; *Exchange Bank & Trust Co. v. Kidwell Constr. Co.*, 472 S.W.2d 117 (Tex. App.1971); *East Gadsden Bank v. First City Nat'l Bank of Gadsden*, 50 Ala.App. 576, 281 So.2d 431 (1973); *Gresham State Bank v. O & K Constr. Co.*, 231 Or. 106, 370 P.2d 726 (1962).

█ FDIC contends, therefore, that First National acted in good faith and within reasonable commercial standards. Tex. Bus. & Com.Code §§ 3.406, 3.419(c); *Steven-Daniels Corp. v. Commercial Nation-*

*al Bank*, 673 S.W.2d 651, 653 (Tex.App. 1984). This defense must be affirmatively pled and must be established within the context of the facts of the particular case in which it is raised. *Continental Bank v. Wa-Ho Truck Brokerage*, 122 Ariz. 414, 595 P.2d 206 (App.1979). Although properly raised before the district court, no finding was made with regard to this defense. Nevertheless, we need not remand this claim to the district court for such a finding. The district could not rule that First National acted in accordance with reasonable commercial standards because the FDIC failed to present any evidence as to what reasonable commercial standards are. *Ickes v. Bache Halsey Stuart Shields, Inc.*, 133 Ariz. 300, 650 P.2d 1282 (App.1982).

█ Brown is not entitled to recover the full $108,008.07 he is seeking, however. Of that amount, $25,552.78 was not embezzled until after Brown was informed of Plake's scheme. At that time, Brown was able to stop Plake. Brown's recovery, therefore, must be reduced by this amount. Brown's oral order to First National to cease activity in the trust account was inadequate as a matter of law to shift Brown's responsibility to First National once he discovered the embezzlement.

Our conclusion is based both upon Texas law and the particular depository contract in this case. Under § 4.403 of the TBCC[3] a bank is not liable for failing to stop payment on a check unless the customer provides so in writing. Similarly, the depository contract here requires that written notice be given First National concerning any change in who was authorized to write checks on the trust account. Despite these provisions requiring written notice, how-

2. § 3.406 states:

Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alternation or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawer's or payor's business.

3. § 4.403 states:

(a) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in Section 4.303.

(b) An order is binding upon the bank only if it is in writing, dated, signed, and describes the item with certainty....

ever, the district court found that First National's failure to abide by Brown's oral order was not in accordance with reasonable commercial standards.

Section 4.103 of the TBCC provides that "no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care...." Section 4.103 speaks only of "agreements," however. It is, by its own terms, inapplicable to the written notice requirement of § 4.403. Although § 4.103 is certainly applicable with regard to the depository contract, we do not find that First National failed to act in accordance with the good faith and ordinary care requirements of § 4.103. We find that the district court's decision to the contrary is unsupported by the record or by the law. No evidence was introduced as to what reasonable commercial standards are in this context. Moreover, a provision requiring written notice be provided to a bank can hardly be called unreasonable as it is already established as law by § 4.403. We, therefore, reverse the district court on this issue. We find that Brown should recover $82,455.29 from the FDIC.

### III.  THE MORAN CHECK

A collecting bank warrants the authenticity of endorsements on checks that it transfers to a drawee bank for payment. Tex.Bus. & Com.Code § 4.207. First National provided such a warranty to First City when it guaranteed the prior endorsement on the Moran check. Because First City reimbursed Moran for this improperly paid check, First City is subrogated to Moran's rights and thus may recover from First National's receiver for the amount of the first Moran check. Tex.Bus. & Com. Code § 4.407.

The burden of determining the authenticity of endorsements is properly placed upon the collecting bank because the collecting bank is the first bank in the collection chain and is in the best position to determine the authenticity of endorsements. *Ames v. Great Southern Bank,* 672 S.W.2d at 450. First National failed to carry its burden here and so must bear the loss occasioned by its failure.

First National argues that it should be relieved of liability because this loss was occasioned by Brown's negligence in failing adequately to supervise Plake. This argument must be rejected as it was earlier with regard to Brown's claims. Similarly, we reject the district court's finding that Brown "constructively received" the proceeds of the Moran check. For the reasons already discussed, this argument does not relieve First National of liability for paying this check on an unauthorized endorsement.

We uphold the district court's judgment permitting First City to recover $24,954.04 for the Moran check. We reverse the district court's judgment, however, assessing this liability against Brown and hold that the FDIC must pay this amount to First City.

### IV.  CONCLUSION

The district court's finding that Brown constructively received the proceeds of the embezzled checks must be reversed. Because the FDIC failed to introduce any evidence to show that First National acted in accordance with reasonable commercial standards in accepting the embezzled checks for deposit, we find that this defense is unavailable to the FDIC. Accordingly, we hold the FDIC liable as First National's receiver for the conversion of these checks.

The district court's finding that Brown's oral stop activity order was binding upon First National must also be reversed. Brown must bear the loss in the sum of $25,552.78 for checks Plake cashed after February 3, 1983. Deducting this sum from the amount claimed to be converted by the bank, $108,008.07, leaves a net recovery from the FDIC to Brown of $82,-455.29.

*Finally, the district court's finding that* First National did not breach its presentment warranties under § 4.207 must also

be reversed. First City is entitled to a judgment of $24,954.04 against the FDIC.

Judgment is awarded H.L. Brown, Jr. in the amount of $82,455.29 plus interest against the Federal Deposit Insurance Corporation as receiver of the First National Bank of Midland. Judgment is also awarded the First City National Bank of Midland in the amount of $24,954.04 plus interest against the Federal Deposit Insurance Corporation as receiver of the First National Bank of Midland.

REVERSED AND RENDERED.