OPINION
 

 Per Curiam:
 

 In fall 1988, Torino Construction Corporation (“Torino”) hired respondent Apex Framing, Inc. (“Apex”) to frame twenty homes in a housing development in Las Vegas, Nevada. Steve and Neal Jewett (“the Jewetts”) were the Apex supervisors for the Torino framing job. In December 1988 and January 1989, Torino wrote checks to Apex which the Jewetts deposited without incident into Apex’s account with Continental National Bank.
 

 On Friday, February 3, 1989, the Jewetts picked up a check from Torino for $34,613.10 (“Torino check”). The Torino check was made payable to “Apex Framing,” not “Apex Framing,
 
 *1517
 

 Inc.”
 

 [1]
 

 The Jewetts did not deposit the Torino check in Apex Framing, Inc.’s account with Continental National Bank, but instead took the check to respondent Ensign Federal Credit Union.
 

 Unbeknownst to Torino and Apex Framing, Inc., the Jewetts had developed a fraudulent check cashing scheme. The Jewetts had filed a fictitious firm name certificate for “Apex Framing” on February 1, 1989, with Clark County. On February 3, 1989, the Jewetts presented this document to Ensign and opened a business checking account in the name of Apex Framing. The Jewetts already had personal accounts at Ensign. On the same day the Jewetts opened the Apex Framing account, Neal Jewett returned to Ensign and presented the $34,613.10 Torino check for deposit into the account. After verifying that the Apex Framing account existed, Ensign employee Carolyn Bergquist accepted and deposited the Torino check. In the same transaction, Neal Jewett requested that Ensign write cashier’s checks against the $34,613.10 Torino check which he had just deposited. This transaction essentially constituted cashing the Torino check.
 

 The Torino check was drawn on Torino’s First Interstate Bank account in California, and it was therefore an out-of-state check. Ensign’s policy regarding out-of-state checks provided, “[i]f the member wants to deposit an out-of-state check ... a seven (7) working day hold will be placed on the check.” However, the .policy also provided that “[n]o out-of-state checks will be cashed except under the following circumstances:
 

 a) Member has sufficient [funds] in their account to cover the check.
 

 b) A justifiable check approved by Mr. Gates, Janette, Diane, Colleen, Marilyn, or Terri. (Examples of justifiable checks: Checks from the Church [LDS] or large companies such as J.C. Penney, Sears, etc.)
 

 c) A good established member of the Credit Union.
 

 Thus, under Ensign’s policy, the Torino check could be cashed if Apex Framing had sufficient funds in its account to cover it, or the check was from a large well-known entity
 
 and
 
 a supervisor approved, or Apex Framing was a good established member of Ensign.
 

 Uncertain of whether she could write cashier’s checks against the Torino check, Carolyn Bergquist went to her supervisor, Terri Clark. Clark approved the transaction and Bergquist wrote
 
 *1518
 
 four cashier’s checks against the Torino check at the Jewetts’ request as follows: Margaret Illions for $7,000 (a former employee of Apex Framing, Inc.); Los Arcos Equipment for $11,575.50 (for tool rental to Apex Framing, Inc.); Leroy Jewett for $1,500; H. Neal Jewett for $10,000. The four checks totalled $30,075.50, leaving approximately $4,500 in the account. Apex Framing, Inc. received, the benefit of the two checks to Margaret Illions and Los Arcos Equipment totalling $18,575.50.
 

 On Monday, February 6, 1989, the president of Apex Framing, Inc., Mark Escoto, noticed that the Jewetts had not reported to work and became suspicious. He called Torino to inquire about the check. Torino immediately placed a stop payment on the check, and the funds were never transferred to Ensign. Torino then issued and delivered a replacement check for $34,613.10 to Apex Framing, Inc.
 

 Subsequently, Ensign sued Torino and the Jewetts to recover the amount disbursed on the Torino check. In turn, Torino filed a third-party complaint against Apex Framing, Inc. seeking indemnity. The Jewetts were never located. The case proceeded to a bench trial.
 

 Pursuant to NRS 104.3406, the district court held that Torino was negligent for failing to include the word, “Inc.,” on the check and that this negligence substantially contributed to the Jewetts’ fraudulent scheme. Accordingly, the district court held that Ensign is entitled to judgment against Torino for $30,075.50 and that Torino is entitled to indemnification on its third-party complaint against Apex Framing, Inc. in the amount of $18,575.50.
 

 On appeal, Torino contends that the district court erred in its application of NRS 104.3406 because it failed to determine whether Ensign acted in accordance with reasonable commercial standards before affording Ensign the protection of the statute. We agree.
 

 The district court’s decision turned on its application of NRS 104.3406, which at that time provided:
 

 Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith
 
 and in accordance with the reasonable commercial standards of the drawee’s or payor’s business.
 

 (Emphasis added.) According to this statute, the holder in due course or payor must act with good faith and in accordance with the reasonable commercial standards of its business. Here, the district court determined that Ensign was a holder in due course
 
 *1519
 
 under NRS 104.3302, and it also found that Ensign acted in good faith. However, the district court erred in its application of the statute because it never determined whether Ensign acted in accordance with the reasonable commercial standards of credit unions.
 

 In its order, the district court made the following finding of fact:
 

 Ensign did not follow its own internal rules regarding delay before permitting depositors to draw against a newly opened account. Had it done so, no payment would have been made before Torino stopped payment of its check.
 

 We note that a bank’s failure to follow its own normal procedures indicates that the bank failed to act in accordance with reasonable commercial standards. Barnett Bank of Miami Beach N.A. v. Lipp, 364 So. 2d 28 (Fla. Dist. Ct. App. 1978). Nevertheless, our review of the record demonstrates that the remaining findings of fact and conclusions of law reflect that the district court never made a specific conclusion regarding whether Ensign acted in accordance with reasonable commercial standards in this particular transaction as required by NRS 104.3406.
 

 Other courts applying U.C.C. section 3-406 (NRS 104.3406) have held that only where the bank has acted in accordance with reasonable commercial standards in the payment of checks is the defense of negligence of the other party available to it. Trust Co. of Georgia Bank of Savannah v. Port Terminal and Warehousing Co., 266 S.E.2d 254, 257 (Ga. Ct. App. 1980); Empire Moving and Warehouse Corp. v. Hyde Park Bank & Trust Co., 357 N.E.2d 1196 (Ill. App. Ct. 1976); E. Bierhaus & Sons, Inc. v. Bowling, 486 N.E.2d 598 (Ind. Ct. App. 1985). The determination of whether a party conformed to reasonable commercial standards is a question for the trier of fact.
 
 Georgia Bank,
 
 266 S.E. 2d at 259;
 
 Bierhaus,
 
 486 N.E.2d at 603. Accordingly, the district court, as the trier of fact, erred in failing to determine whether Ensign’s actions were commercially reasonable and thus, did not employ NRS 104.3406 properly.
 

 For the foregoing reasons, we conclude that the district court erred in its application of NRS 104.3406 because it failed to determine if Ensign acted reasonably in light of commercial standards before affording it the protection of the statute. We therefore reverse the district court’s judgment and remand for proceedings consistent with this opinion.
 

 [1]
 

 Mark Escoto, Apex’s owner and president, testified that these two checks from Torino, like the Torino check at issue, were made payable to “Apex Framing,” not “Apex Framing, Inc.”