1997 OK CIV APP 79

**HUNTER'S MODERN APPLIANCE, INC., an Oklahoma corporation,** Plaintiff/Appellant,

v.

**BANK IV OKLAHOMA, N.A.,** Defendant/Appellee,

and

**Betty Kahle, Defendant.**

No. 89386.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 28, 1997.

Duke Halley, Jerry Dick, Woodward, for Plaintiff/Appellant.

James M. Bailey, Ponca City, for Defendant/Appellee.

## OPINION

HANSEN, Presiding Judge:

¶1 Appellant, Hunter's Modern Appliance (Hunter's), seeks review of the trial court's order denying Hunter's motion for new trial after the court had granted summary judgment in favor of Appellee, Bank IV Oklahoma (Bank). Defendant Betty Kahle (Kahle) is not a party to this appeal. The appeal is submitted without appellate briefing in accordance with the accelerated procedures in Oklahoma Supreme Court Rule 1.36.

¶2 As alleged by Hunter's, this action arises from a scheme by Kahle, Hunter's employee, whereby she converted to her own use $92,422.29 in funds belonging to Hunter's. Over an unspecified period of time, Kahle presented to Bank, or its predecessor, third party checks made payable to Hunter's and requested cash payment. Hunter's asserts Bank wrongfully and negligently paid the cash to Kahle in the amount alleged. Bank appears to concede its liability, if any, for the acts or omissions of its predecessor.

¶3 Bank moved to dismiss Hunter's Petition for failure to state a claim upon which relief could be granted. In support of its motion, Bank attached a document entitled *Authorization for Cash Withdrawal (Authorization)*, which was addressed to Bank's predecessor and signed by Hunter's president. The *Authorization* provides, in relevant part:

1) Commencing December, 1989, we hereby authorize you to honor and execute, at [predecessor bank] any and all requests for cash withdrawals in the manner of: a) less cash on deposits; or b) checks made payable to cash or said business.

¶4 Kahle was the only Hunter's employee named on the *Authorization.* Her name was handwritten on the form that had been prepared by Bank's predecessor. That portion of the *Authorization* for limiting the dollar amount of cash withdrawals was left blank, which by the terms of the document left the amount unlimited.

¶5 Bank argued in its motion that Hunter's could not be entitled to relief because the transactions Hunter's complained of in its Petition "were expressly authorized in writing" by the *Authorization*. Bank further argued in support of its motion that if Kahle's signature were determined to be *unauthorized*, it would nonetheless prevail under various sections of the Negotiable Instruments Article of the Uniform Commercial Code (UCC), 12A O.S.Supp.1994 §§ 3–101 *et seq.*

¶6 In its response to Bank's motion, Hunter's argued the *Authorization* was ambiguous and there were material issues of fact in controversy regarding its construction. Hunter's additionally argued Bank failed to show how Hunter's may have been negligent and that, in any event, Bank was not excused under the UCC because of its failure to [a] comply with reasonable commercial standards, and [b] act with ordinary care.

¶7 Because the *Authorization*, a matter outside the pleading, was presented with and in support of Bank's motion, the trial court, pursuant to 12 O.S.1991 § 2012(B), treated the motion as one for summary judgment. In its order granting summary judgment for Bank, the trial court made specific findings of facts that it determined were not in substantial controversy, and concluded "that either the transactions in issue were authorized by [Hunter's] or, if not authorized, [Hunter's] bears responsibility under 12A O.S. § 3–405". The trial court denied Hunter's timely motion for new trial. Hunter now seeks review of that order.

¶8 The standard of review of a trial court's decision denying a motion for new trial is whether the court abused its discretion. *SMS Financial L.L.C. v. Ragland*, 1995 OK CIV APP 160, 918 P.2d 400. The trial court should grant a new trial where, among other things, a decision by the court is not sustained by sufficient evidence, or is contrary to law. 12 O.S.1991 § 651(Sixth). The trial court's decision under review here is that granting summary judgment in favor of Bank.

¶9 Summary judgment is appropriate only where it appears there is no substantial controversy as to any material fact, and that a party is entitled to judgment

as a matter of law. *First State Bank v. Diamond Plastics,* 1995 OK 21, 891 P.2d 1262. It must not only appear there is no dispute as to the facts, but that the undisputed facts and inferences, viewed in the light most favorable to the party opposing the motion, are such that reasonable men, in the exercise of fair and impartial judgment, would not reach differing conclusions from them. *SMS Financial,* 918 P.2d at 401.

¶ 10    Hunter's contends there are remaining facts in controversy regarding whether the *Authorization* allowed Banks's actions or excused them as a matter of law. We agree. We find the *Authorization* is, at best, ambiguous. Bank is therein authorized to honor requests by Kahle for cash *withdrawals* where such request are made in the manner of [a] less cash on deposits, or [b] checks made payable to cash or Hunter's. The ambiguity is as to the meaning in the *Authorization* where it refers to a withdrawal made by "checks made payable to Hunter's".

¶ 11    Bank asserts, and the trial court apparently agreed, the *Authorization* applies here because Kahle was given cash by Bank in exchange for checks made payable to Hunter's, but *by a third party.* Hunter's argues conversely the *Authorization* only applies where the check which is made out to Hunter's is *on its own account.* Hunter's argument is supported by the fact that the *Authorization* is limited to cash *withdrawals.*

¶ 12    Hunter's offered evidentiary material in the form of an expert affidavit to the effect that a *withdrawal* first requires that a deposit occur. The expert opines withdrawing cash after a deposit occurs is decidedly different than giving cash for a check that is endorsed at the time it is presented. In the latter case there is no record of the transaction.

¶ 13    The evidence of record indicates there was no deposit before Bank gave Kahle funds for the checks and that no record was made of the transactions. Thus, either [a] Kahle's transactions at Bank were not *withdrawals* within the meaning of the *Authorization* and Bank had no authority thereunder to give Kahle the cash, or [b] the question of what is a withdrawal within the meaning of the *Authorization* creates an inherent ambiguity within the document. In either case, the trial court erred in relying on the *Authorization* in granting summary judgment for Bank.

¶ 14    Under the evidence, reasonable people could conclude the transactions were not authorized by Hunter's execution of the *Authorization,* making summary judgment inappropriate. *SMS Financial,* 918 P.2d at 401. In the alternative, where the meaning of an ambiguous contract is in dispute, construction of the contract becomes a mixed question of fact and law and should be submitted to the jury. *Jerry Chambers Exploration v. Headington Penn Corp.,* 1994 OK CIV APP 46, 878 P.2d 385.

¶ 15    We further find the trial court erred in relying on 12A O.S.Supp.1992 § 3–405 when granting summary judgment. Bank asserts that if Kahle was not authorized to complete the contested transactions, it prevails anyway under § 3–405. Presuming, without deciding, that § 3–405 applies, there are questions of material fact remaining in controversy regarding respective liability of the parties under that section.

¶ 16    We may look to the UCC Comments as an interpretive tool. *Wilkerson Motor Co., Inc. v. Johnson,* 1978 OK 12, 580 P.2d 505. The UCC Comment to § 3–405 provides, in relevant part,

> Section 3–405 is addressed to fraudulent indorsements made by an employee with respect to instruments with respect to which the employer has given responsibility to the employee. Section 3–405 is based on the belief that the employer is in a far better position to avoid the loss.... If the bank failed to exercise ordinary care, subsection (b) allows the employer to shift loss to the bank to the extent the bank's failure to exercise ordinary care contributed to the loss.... The provision applies regardless of whether the employer is negligent.

¶ 17    "Ordinary care" is defined as "observance of reasonable commercial standards prevailing in the area in which the person is located, with respect to the business in which

the person is engaged". 12A O.S.Supp.1992 § 3–103(a)(7). Hunter's submitted evidentiary material which could lead reasonable people to conclude Bank did not observe reasonable commercial standards in the Kahle transactions. Hunter's proffered expert opined:

> To permit Mrs. Kahle to cash third party checks based upon [the *Authorization*], particularly in instances where the business was at the same time depositing cash, is a gross violation of both good banking practices, and reasonable commercial standards, and constituted a lack of ordinary care.

¶ 18 Additionally, Hunter's submitted a portion of Bank's own operating procedures which provides:

> Checks made payable to a business are normally NEVER "Cashed". This is because we do not know who is AUTHORIZED to cash the check for that company. . . .
>
> Checks made payable to a business *should be deposited to the company's account.* If cash is desired, a check should be written for the desired amount of cash. (All emphasis in original).

¶ 19 Although not definitive of the issues in this case, Bank's own policies are emphatically in general contradiction to its asserted position here. There are exceptions to Bank's policies not applicable here. However, it is implicit in Bank's stated policies that, with limited exceptions, *ordinary care* dictates that checks made payable to a business should first be deposited to the business's account before any cash is given.

■ ¶ 20 Whether Bank exercised *ordinary care* is a requisite consideration before liability under § 3–405 can be determined. There are substantial questions of material fact remaining as to Bank's conduct in the Kahle transaction. The question of ordinary care is one for the trier of fact. See, *W.R. Grimshaw Co. v. First National Bank & Trust Co. of Tulsa*, 1977 OK 28, 563 P.2d 117.[1]

¶ 21 The trial court erred as a matter of law when it granted summary judgment in favor of Bank. Therefore, the trial court abused its discretion when it failed to grant Hunter's motion for new trial. The trial court's orders denying Hunter's motion for new trial and granting Bank's motion for summary judgment are REVERSED and this matter is REMANDED to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

JOPLIN, J., concurs.

BUETTNER, J., concurs in result:

I agree that the summary judgment in favor of Bank should be reversed. However, the principal reason is that the Bank did not present any evidence that 12A O.S.1991 § 3–405 was applicable. Nor did the Bank submit sufficient evidence that the cash obtained by the defalcating employee was obtained in accordance with the terms of the form "Authorization For Cash Withdrawal." Thus, District Court Rule 13 was not satisfied.

1. Also see, *Torino Construction Corp. v. Ensign Federal Credit Union*, 111 Nev. 1515, 908 P.2d 702 (1995); *Schoenfelder v. Arizona Bank*, 165 Ariz. 79, 796 P.2d 881; and *Zions First National Bank v. Clark Clinic Corp.*, 762 P.2d 1090 (Utah 1988).