PEOPLE, *for use and benefit of* STATE EMPLOYEES
RETIREMENT SYSTEM, *v.* TRAVERSE
CITY STATE BANK.

1. Bills and Notes—Forged Indorsement.

A signature forged or made without the authority of the person
whose signature it purports to be is wholly inoperative, and
no right to retain the instrument or give a discharge or
enforce payment can be acquired through or under such signa-
ture unless the party against whom it is sought to enforce
such right is precluded from setting up the forgery or want
of authority (CL 1948, § 439.25).

2. Same—Impostor and Forger.

A drawer or maker who pays a holder when the payee is an
impostor has no recourse on an indorser, but where the payee's
name is signed by a forger and payment is made to a sub-
sequent indorser, the drawer or maker can recover.

3. Same—Forgery—Impostor—Intent of Maker.

The dominant intent of the State in drawing a warrant to
the order of a retired employee is to pay the retiree rather
than whatever person may represent himself to be the retiree,

References for Points in Headnotes

[1] 11 Am Jur 2d, Bills and Notes §§ 704, 705, 710.
[2] 11 Am Jur 2d, Bills and Notes §§ 991, 992, 1018.
[3] 11 Am Jur 2d, Bills and Notes §§ 706, 709.
[4] 11 Am Jur 2d, Bills and Notes § 331.
[5] 10 Am Jur 2d, Banks §§ 611, 700, 701.
[6] 11 Am Jur 2d, Bills and Notes §§ 615, 616, 624.
[7] 11 Am Jur 2d, Bills and Notes §§ 386, 589, 695.
[8] 11 Am Jur 2d, Bills and Notes §§ 710–714.

and indorsement of the payee's signature on the warrant by an unauthorized person is not an imposture, but a forgery (CL 1948, § 439.25).

4. SAME—SECOND INDORSEMENT—AGENCY.
   Indorsement by wife of her name on deceased husband's retirement check below the supposed signature of the payee husband, which she also signed, removes the possibility of an imposture since she did not assume the status of the payee and the indorsement is that of an agent of the payee (CL 1948, § 439.25).

5. SAME—INDORSEMENT—VERIFICATION—BURDEN ON CASHING BANK.
   A cashing bank has the burden of verifying the authenticity of any indorsements appearing on a negotiable instrument.

6. SAME—GUARANTEE OF ALL PRIOR INDORSEMENTS.
   A guarantee of all prior indorsements on a negotiable instrument is an absolute guarantee.

7. SAME—FRAUD IN PROCURING DRAFT—FORGED INDORSEMENT—LIABILITY.
   The negligent failure of drawer to protect itself against fraud in procuring the making of a draft does not cast upon the drawer the risk that it will be paid upon a forged indorsement (CL 1948, § 439.25).

8. SAME—WARRANTS ISSUED TO DECEASED RETIREE—PAYMENT ON FORGED INDORSEMENT.
   The State is not precluded from asserting forgery where it causes payroll warrants to be issued to a deceased retiree believing him to be alive, when defendant bank paid the amount of the warrants to the retiree's widow on a forged indorsement (CL 1948, § 439.25).

Appeal from Ingham; Hughes (Sam Street), J. Submitted Division 2 December 6, 1966, at Lansing. (Docket No. 2,304.) Decided March 21, 1968.

Complaint by the State of Michigan against the Traverse City State Bank for reimbursement of money paid to the bank on a forged indorsement. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene Krasicky* and *James J. Wood,* Assistant Attorneys General, for the people.

*Murchie, Calcutt & Brown,* for defendant.

J. H. Gillis, J.   On December 1, 1947, one Clarence V. Hulbert, an employee of the plaintiff, State of Michigan, retired.   Payroll warrants[1] were issued by the plaintiff to Clarence V. Hulbert from December of 1947 to February of 1962.   Unknown to the plaintiff,[2] Clarence V. Hulbert died on July 11, 1957, so that indorsements on warrants cashed after that date totalling $5,100 must have been forged.   On the reverse side of each of these warrants the name of Agnes Hulbert appeared below that of the purported signature of Clarence V. Hulbert.   Fifty-two of the warrants between the months of July 1957 and October 1962 were deposited in the defendant bank.   In each instance the defendant collected the amount thereof on its indorsements which recited "Prior indorsements guaranteed."

Plaintiff required an annual statement of each person receiving a retirement allowance.   Requests for such statements were sent annually on post cards addressed to Clarence V. Hulbert and each statement was returned to the plaintiff.   The opposite side of the post card contained the following information:

---

[1] The payroll warrants referred to hereinafter as warrants are in effect drafts drawn by the plaintiff on itself payable to the order of a named person.

[2] The parties hereto stipulated that plaintiff did not have actual knowledge that Clarence V. Hulbert died July 11, 1957, but defendant basically argues that plaintiff received constructive notice as is detailed later in this opinion.

"Clarence V. Hulbert      1290 :
217 W. 9th Street                  : Sep. 19, 1960
Traverse City, Michigan         : I hereby certify
that I am the identical person named hereon; that
I am a beneficiary of the Michigan State Employes'
Retirement System and legally entitled to the re-
tirement allowance received therefrom; and that the
signature below is in my own handwriting.
"Sept. 16, 1960            CLARENCE V. HULBERT
        Date               signature
                           217 W. 9th Street
                           address"

Plaintiff received actual notice of Hulbert's death
in March of 1962 when his widow died and the attor-
ney for her estate returned 4 uncashed warrants.
The plaintiff was able to collect $3,080.32 from the
widow's estate. Plaintiff instituted the present suit
to collect the balance of its loss from the defendant
on the theory that defendant, having paid the funds
on a forged indorsement, and having guaranteed
the prior indorsements, was liable.

The case was submitted to the trial court on a stip-
ulated set of facts. On May 12, 1966, the court having
agreed with plaintiff's theory, granted its motion
for summary judgment.

Defendant appeals claiming that the trial court
erred in granting this judgment for plaintiff. It
asserts two arguments for this conclusion: (1) the
facts here presented plainly indicate an impostor
situation existed, and (2) the State was precluded
from setting up the forgery pursuant to CL 1948,
§ 439.25 (Stat Ann 1959 Rev § 19.65).[3]

---

[3] "Where a signature is forged or made without the authority of
the person whose signature it purports to be, it is wholly inoperative,
and no right to retain the instrument, or to give a discharge therefor,
or to enforce payment thereof against any party thereto, can be
acquired through or under such signature, unless the party against
whom it is sought to enforce such right is precluded from setting
up the forgery or want of authority."

An impostor situation and the payment on a forged indorsement are closely related but each has a distinct meaning and result in the law of commercial paper.

As the court pointed out in *United States* v. *Bank of America N. T. & S. Assn.* (CA 9, 1959), 274 F2d 366, 367 (81 ALR2d 1358, 1362):

"In a certain sense, all forgers are impostors and, similarly, impostors in connection with commercial paper in a broad sense are usually forgers. But in the law merchant they are supposed to be separate people. Thus, if the payee is an impostor, a drawer-drawee (probably more properly considered as a maker) who pays a holder has no recourse on an indorser. If, however, he who signs the name of a payee may be classified as a forger, the drawer-drawee, after paying a subsequent indorser, may still recover his unfortunate payment from the indorser."

The Court further stated:

"Of course, what makes the difference between the impostor in law and the forger in law is the intent of the maker, something not to be found on the face or back of the instrument." *United States* v. *Bank of America N. T. & S. Assn., supra,* at p 368.

During the period in question the negotiable instruments law, CL 1948, § 439.1 *et seq.* (Stat Ann 1959 Rev § 19.41 *et seq.*) was in effect in Michigan.[4] The negotiable instruments law does not specifically deal with the impostor situation. In his book, Michigan Negotiable Instruments Law and the Uniform Commercial Code, Professor Roy L. Steinheimer stated that under the negotiable instruments law

---

[4] The uniform commercial code, PA 1962, No 174 (CL 1948, § 440.1101 *et seq.* [Stat Ann 1964 Rev § 19.1101 *et seq.*]) became effective on January 1, 1964 in Michigan and therefore had no application to the present case.

there were two approaches to the problem. Many jurisdictions hold that if the "dominant intent" of the maker or drawer was to pay the physical person A, who was posing as B, rather than to pay B, then the maker or drawer must suffer the loss. Other jurisdictions have held that A's indorsement of B's name is a forgery without regard to the maker's or drawer's intention and thus a bank would be paying funds on a forged indorsement.

"There is a dearth of impostor cases in Michigan and from the few cases reported it is impossible to say which of the above approaches to the problem the Michigan courts would follow." Michigan Negotiable Instruments Law and the Uniform Commercial Code, *supra,* at p 84.

Between 1957 and 1962 the plaintiff in the present case delivered the warrants, payable to Clarence V. Hulbert, to a person other than the payee. Yearly the plaintiff sent out post cards as described above and they were returned filled out and signed. The defendant argues that the State intended to pay the person who filled out the cards. Therefore, an indorsement by that person would relieve the defendant from liability under an "impostor" analysis. With this conclusion we cannot agree. The intent of the plaintiff here was to pay its retiree. To illustrate this point we will adopt the above-quoted analysis of Professor Steinheimer. The dominant intent of the plaintiff was to pay the physical person B and not to pay the physical person A who was posing as B. Therefore, under either of the approaches outlined by Professor Steinheimer the defendant's argument must fail. An impostor analysis is not applicable to the present case.

Plaintiff in its brief correctly states:

"It will be noted that on all the checks (see exhibits to complaint), the name of *both* Clarence V,

Hulbert and Agnes G. Hulbert appears as the indorsement. Thus Agnes G. Hulbert, in cashing the checks, was not representing herself to be Clarence G. Hulbert but an agent of Clarence G. Hulbert. She admitted by her signature below the other signature that she was not Clarence G. Hulbert. She, in effect, represented that he was alive, had indorsed the checks first and that she was authorized to cash them for him by adding her signature and presenting them. This is clearly not an imposture.

"If Agnes Hulbert had been a true impostor and signed Clarence's name only, the bank would have immediately seen that she was not a man. As stated at 81 ALR2d 1365 at 1391, the impostor rule is inapplicable where the indorsement is of a name different from that of the named payee. The rule is also stated at page 1371 of that reference where the following observation is made:

" 'Looking now to the relations between the impostor and *the second victim of his fraud, his indorsee to whom he negotiated the instrument,* we find that * * * (3) the impostor has uniformly assumed the status of rightful holder as payee of the instrument.' (Emphasis supplied [in brief].)

"Here, Agnes Hulbert, in cashing the checks, did not assume the status of payee (Clarence Hulbert). She signed below his name. This completely removes this case from the impostor rule. Agnes Hulbert, in effect, signed each check as agent and represented that she was the agent of Clarence Hulbert."

Defendant next contends that the State was precluded from raising the forged indorsement pursuant to CL 1948, § 439.25 (Stat Ann 1959 Rev § 19.65). See footnote 3.

In effect defendant argues that the plaintiff should have discovered the fraud because of the variance in the signatures on the warrants. There is also evidence in the record to indicate that the widow had

made application for medical benefits from the State and on this application stated that her husband was deceased. Defendant claims plaintiff was negligent in not discovering the fraud and therefore should be precluded from recovery.

In taking this position, it seems to this Court that defendant is overlooking its own responsibilities in this situation. A burden is cast upon the cashing bank to verify the authenticity of any indorsements appearing on the instrument.[5] Furthermore, in the present case the defendant "guaranteed all prior indorsements." It has been held that this guarantee is absolute. See *First National City Bank of N. Y. v. Manufacturers Trust Company* (1963), 39 Misc 2d 428 (240 NYS2d 669). This case further holds at p 429:

"The negligent failure by a drawer to protect itself against fraud in procuring the making of a draft does not cast upon the drawer the risk that it will be paid upon a forged indorsement."

This statement has particular application to the present case. Here, the negligence, if any, on the part of plaintiff caused the warrants to issue. However, it was the lack of due care on the part of the defendant which allowed payment on the forged indorsement. Therefore, plaintiff was not precluded from asserting the fact of the forgery in these circumstances.

Affirmed. Costs to appellee.

T. G. KAVANAGH, P. J., and McGREGOR, J., concurred.

---

[5] *R. Mars, The Contract Co.* v. *Massanutten Bank of Strasburg* (CA 4, 1960), 285 F2d 158 (87 ALR2d 633); *Saf-T-Boom Corp.* v. *Union National Bank* (1963), 236 Ark 518 (367 SW2d 116).