219 N.J. Super. 325 (1987)
530 A.2d 357
CLIENTS' SECURITY FUND OF THE BAR OF NEW JERSEY, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, DEFENDANT-RESPONDENT, AND FIRST NATIONAL BANK OF NEW JERSEY, BY ITS SUCCESSOR FIRST FIDELITY BANK, N.A., NORTH JERSEY, DEFENDANT-APPELLANT, AND MIDLANTIC NATIONAL BANK, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1987.
Decided August 18, 1987.
*327 Before Judges KING, HAVEY and MUIR, Jr.
Paul F. Campano argued the cause for appellant (Crummy, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Robert W. Delventhal and Paul F. Campano on the briefs).
James P. Brady argued the cause for respondent Allstate Insurance Company of New York (Novins, Farley, York, DeVincens & Pentony, attorneys; James P. Brady on the brief).
Michael F. O'Neill argued the cause for respondent Allstate Insurance Company of New Jersey (Purcell, Ries, Shannon & Mulcahy, attorneys; Michael F. O'Neill on the brief).
Michael J. Kassel argued the cause for respondent New Jersey Manufacturers Insurance Company (Yampell & Kaplan, attorneys; Robert M. Kaplan on the brief).
Kenneth J. Bossong filed a statement in lieu of brief.
The opinion of the court was delivered by HAVEY, J.A.D.
Defendant First Fidelity Bank, N.A. (First Fidelity) appeals from a summary judgment dismissing its cross-claim against Allstate Insurance Company (Allstate). The appeal involves application of the so-called "impostor rule", under § 3-405 of *328 the Uniform Commercial Code as enacted in New Jersey at N.J.S.A. 12A:3-405. The "impostor rule" makes an indorsement in the name of the payee effective if an impostor induces the maker or drawer to issue the instrument to him in the name of the payee. N.J.S.A. 12A:3-405(1)(a). Consequently, title to the instrument passes as though there had been no forgery, and liability on the instrument is transferred from the collector-depository bank to the maker-drawer of the instrument. Judge Levy, the motion judge, held that the rule does not apply to an attorney who forges the signature of his clients to settlement drafts, since the attorney has not "impersonated" the clients. We agree and affirm.
This litigation commenced by the filing of a complaint by the Clients' Security Fund of the Bar of New Jersey (Fund) against First Fidelity, Allstate, and Midlantic National Bank (Midlantic), Allstate's paying bank.[1] The Fund alleged that Samuel K. Yucht, a New Jersey attorney, diverted the proceeds of settlement drafts issued by Allstate and made payable to Yucht's clients in settlement of personal injury actions in which Yucht acted as attorney. In each case Yucht delivered forged releases to Allstate. Allstate in turn issued settlement drafts made payable to the client and Yucht as attorney. The Fund alleged that Yucht forged his clients' indorsements on each draft, added his own indorsement and deposited the checks into his trust account maintained at First Fidelity. Yucht thereafter withdrew the proceeds for his own use.
Upon discovering their losses, Yucht's clients filed claims with the Fund. The Fund paid the claims and thereupon filed *329 the present law suit, against First Fidelity, Allstate and Midlantic, alleging conversion and breach of implied warranty that the signatures on the drafts were genuine. First Fidelity cross-claimed against Allstate, asserting that the "impostor rule", N.J.S.A. 12A:3-405, rendered the forged instruments effective so as to preclude First Fidelity's liability as the depository bank.
First Fidelity thereupon settled all claims with the Fund, preserving its cross-claim against Allstate. On cross-motions for summary judgment, Judge Levy found that Yucht had not impersonated his clients in the manner contemplated by the "impostor rule" in that Yucht never assumed his clients' identities, but simply forged their signatures to the settlement drafts. The judge concluded that the rule was therefore inapplicable and dismissed First Fidelity's cross-claim.
The general rule under the Code is that any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it. N.J.S.A. 12A:3-404. An unauthorized signature includes a forgery. N.J.S.A. 12A:1-210. A forged indorsement is normally ineffective to pass title or to negotiate the instrument on which it appears. Brighton, Inc. v. Colonial First Nat'l Bank, 176 N.J. Super. 101, 112 (App.Div. 1980), aff'd 86 N.J. 259 (1981). Payment of a check bearing a forged indorsement constitutes conversion under N.J.S.A. 12A:3-419(1)(c), and on a conversion theory, a payee may seek recovery against the drawee. Ibid; see also White & Summers, Uniform Commercial Code (2 ed. 1984) § 15-4 at 586-589. While generally a depository bank handling a forged check may claim immunity against the payee under N.J.S.A. 12A:3-419(3), that immunity may be lost where the depository bank acted in bad faith or failed to adhere to reasonable commercial standards. See Knesz v. Central Jersey Bank and Trust Co. of Freehold, 97 N.J. 1, 21-22 (1984). Also, a depository bank passing a check bearing a forged indorsement to a drawee bank may ultimately *330 be held liable for a breach of implied warranty that it had good "title". See N.J.S.A. 12A:4-207(1); see also White & Summers, § 15-4 at 589-594.
N.J.S.A. 12A:3-405, the so-called "impostor rule", is an exception to the general rule that a forged instrument is ineffective to pass title. It provides, in applicable part as follows:
(1) An indorsement by any person in the name of a named payee is effective if
(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee....
If N.J.S.A. 12A:3-405 applies, the indorsement is deemed effective, and thus a depository bank's liability on a conversion theory, or under a § 4-207 warranty, is precluded, with the result that the loss is shifted to the drawer. See Brighton, Inc. v. Colonial First Nat'l Bank, supra, 176 N.J. Super. at 112-113; see also Girard Bank v. Mount Holly State Bank, 474 F. Supp. 1225, 1231-1232 (D.N.J. 1979).
Essentially, N.J.S.A. 12A:3-405 enlarges "effective" indorsements by abandoning the pre-Code rule in some states that impostors who use the mail to defraud makers, rather than by face-to-face contact, were without power to transfer good title to the instrument. See Uniform Commercial Code Comment § 2, N.J.S.A. 12A:3-405. Section 3-405 abandons the distinction between mail and face-to-face impostoring and imposes liability in all cases on the party dealing with the impostor. White & Summers, § 16-8 at 633. Thus, the rule operates to render the defective instrument effective to pass title when an impostor "... by use of the mails or otherwise has induced the maker ... to issue the instrument to him...." N.J.S.A. 12A:3-405(1)(a).
The rationale of the rule is at least in part predicated on a negligence or estoppel theory. As between two innocent persons, the one whose act was the cause of the loss should bear the consequences. See East Gadsden Bank v. First City Nat. Bank of Gadsden, 50 Ala.App. 576, 281 So.2d 431, 433 *331 (1973). The loss should fall "... on the person who dealt with the impostor, and presumably, had the best opportunity to take precautions that would have detected the fraud, rather than on a subsequent holder who had no similar opportunity." Fair Park National Bank v. South Western Investment Co., 541 S.W.2d 266 (1976); see also Taylor, "Recent Developments In Commercial Law", 11 Rutgers Camden Law Journal 527, 616-617 (1980). Thus, since it is the drawer who deals with the impostor, he should bear the loss. In effect, N.J.S.A. 12A:3-405 "... conclusively presumes that the drawer was negligent in not requiring identification." White & Summers, § 16-8 at 631.
White & Summers characterize the "impostor rule" as "... a banker's provision intended to narrow the liability of banks and broaden the responsibility of their customers." Id. at 639. The commentators caution against expansion of application of the rule:
[W]e believe the courts should be hesitant to expand 3-405 beyond its explicit limits, for 3-405 is an exception to the general obligation of a bank to pay only according to the order of its customer and it is in derogation of one of the main protections customers believe they are buying, namely protection from theft by one who forges the indorsement of the intended payee. [Ibid.]
So viewed, § 3-405 must be limited to the clear case where there has been an imposture which induces the issuance and delivery of an instrument to the impostor or his confederate. The term "impostor" refers to "impersonation" and does not extend to a false representation that the party is the authorized agent of the principal. Uniform Commercial Code Comment § 2, N.J.S.A. 12A:3-405. The drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement. Ibid. "Impersonation" is the act of pretending or representing oneself to be another. Black's Law Dictionary, (5 ed. 1979) at 679. Such impersonation is of an identity, either real or fictitious, with which the drawer believes he is dealing. East Gadsden Bank v. First City Nat. Bank of Gadsden, supra, 281 So.2d at 433. "Impersonation" is distinguishable from forgery, which involves alteration *332 of a writing without authorization or the execution of a writing "... so that it purports to be the act of another who did not authorize that act or of a fictitious person[.]" N.J.S.A. 2C:21-1a(1) and (2).
N.J.S.A. 12A:3-405(1)(a) not only requires impersonation, it also requires that the drawer or maker is induced by such impersonation to issue the instrument to the impostor in the name of the payee. Courts in other jurisdictions have generally required proof of "impersonation" and inducement before applying the "impostor rule". See East Gadsden Bank v. First City Nat. Bank of Gadsden, supra, 281 So.2d 431, (drawer bank that issued check to its customer and customer's auto dealer not liable when customer forged dealer's signature); Maddox v. First Westroads Bank, 199 Neb. 81, 256 N.W.2d 647 (1977) (where person who did not pose as payee of check but rather purported to act as the agent of the drawee bank's customers, the "impostor rule" was not applicable); Leigh Co. v. Bank of New York, 617 F. Supp. 147 (S.D.N.Y. 1985) (person who represents himself only as being himself while obtaining check payable to partnership was not an "impostor" to make forged instrument effective).
In People v. Traverse City State Bank, 9 Mich. App. 639, 158 N.W.2d 65 (1968), the Michigan Court of Appeals held that a bank cashing a state payroll warrant forged by a state-employee's widow, cannot avoid liability under the "impostor rule". The state had sent checks payable to the deceased employee because the widow had forged the deceased signature on authorization forms. The court stated:
In a certain sense, all forgers are impostors and, similarly, impostors in connection with commercial paper in a broad sense, are usually forgers.
........

Of course, what makes the difference between the impostor in law and the forger in law is the intent of the maker, something not to be found on the face or back of the instrument. [Id. 158 N.W.2d at 67, quoting United States v. Bank of America N.T. & S. Assn., 274 F.2d 366, 367-368 (9th Cir.1959) emphasis supplied.]
*333 We are satisfied that on the facts before us, the "impostor rule" is inapplicable. Allstate did not deal with Yucht as an "impersonator". Yucht never pretended to be someone other than himself. He always represented that he was the attorney for the claimants: he never claimed to be the clients themselves. It was Allstate's intent to deal with both Yucht and his respective clients and it so issued the settlement drafts. It was Yucht's misrepresentation of fact that his clients had agreed to settle, rather than imposturing, that "... induced the maker ... to issue the instrument[s] to him...." N.J.S.A. 12A:3-405(1)(a). Yucht strengthened this misrepresentation by presenting forged releases to Allstate. There was no intent on Allstate's part that Yucht should supply the indorsements of his clients. The forged indorsements were therefore not rendered "effective", and thus the loss was not shifted to Allstate as the drawer of the settlement drafts. See Brighton, Inc. v. Colonial First Nat'l Bank, supra, 176 N.J. Super. at 113.
The negligence or estoppel theory, upon which the "impostor rule" is predicated, is clearly inapplicable here. From the outset, Yucht represented to Allstate the true fact that he was the attorney for the claimants. In the usual course of negotiating the bodily injury claims, the claims were settled and Allstate received releases containing signatures which it had no reason to question. Allstate issued its drafts in a typical fashion made payable to both the attorney and his clients, and sent them to Yucht as the attorney of record. Yucht's forgeries were occurrences Allstate could not reasonably have anticipated.
To accept First Fidelity's claim that Yucht was an impersonator would effectively negate the general rule that a forged instrument is ineffective to pass title. Virtually every forger would be an "impersonator". Every forged instrument would thus be rendered effective, thereby immunizing the depository bank from liability.
First Fidelity argues for the first time on appeal that even if the "impostor rule" does not apply, the forged indorsements *334 were "ratified" by the Fund as as a result of the Fund's suit to collect the proceeds of the settlement drafts on behalf of Yucht's clients. N.J.S.A. 12A:3-404(1) provides that an unauthorized signature is "... wholly inoperative as that of the person whose name is signed unless he ratifies it. ..." [emphasis supplied]. First Fidelity cites the general rule that when a principal institutes suit to enforce an unauthorized agreement made by his agent, the principal affirms or ratifies the transaction. 2 Restatement, Agency 2d, § 82, § 83, § 97a at 210, 212 and 250 (1958); see also Clarkson v. Selected Risks Insurance Co., 170 N.J. Super. 373, 379 (Law Div. 1979).
The Fund's suit to collect the proceeds of the settlement drafts cannot be deemed a ratification simply because it is clear from the pleadings that the Fund did not sue Allstate to enforce the settlement agreements. The gravamen of the Fund's action against First Fidelity and Allstate was that they converted the funds and breached an implied warranty that the signatures on the drafts were genuine. The Fund did not seek to compel Allstate to carry out the terms of the settlements. Therefore, First Fidelity's claim that the signatures were "ratified" must fall.
The order of summary judgment is affirmed.
NOTES
[1] Clients' Security Fund filed 29 separate actions, including the above-captioned matter, against various insurance carriers and the carriers' paying banks. Although the matters were not consolidated below, Judge Levy, with the consent of the parties in all of the actions, submitted an opinion in the above-captioned matter as a representative case and applied his ruling to First Fidelity's cross-claims against every carrier. Only Allstate Insurance Company of New York, Allstate Insurance Company of New Jersey and New Jersey Manufacturers Insurance Company participated in this appeal as respondents.