580 So.2d 238 (1991)
Wanda J. SNOW, F/K/a Wanda J. Byron, As Both Natural Guardian for Steven Kosturik, a Minor, and As Custodian for Steven Kosturik, a Minor, under the Florida Gift to Minors Act, Appellant,
v.
Cary G. BYRON, Shearson Lehman Hutton, Inc., F/K/a Shearson American Express, Inc., and Southeast Bank, N.A., a National Banking Institution, Appellees.
Nos. 89-1105, 89-1515.
District Court of Appeal of Florida, First District.
May 9, 1991.
*239 John Paul Howard, Jacksonville, for appellant.
Thomas M. Baumer of Baumer, Bradford & Walters, P.A., Jacksonville, for appellee, Shearson Lehman Hutton, Inc.
John McE. Miller of Slott & Barker, Jacksonville, for appellee, Southeast Bank, N.A.
SMITH, Judge.
Appellant seeks reversal of the dismissal of her amended complaint as to Shearson Lehman Hutton, Inc. (Shearson), a defendant below, for failure to state a cause of action, and a reversal of the summary judgment granted in favor of Southeast Bank, N.A. (Southeast), also a defendant below. We reverse and remand.
Appellant was previously married to Cary Byron. During the marriage, Byron established an account with Shearson for Steven Kosturik, appellant's son by a previous marriage. The account was established under the Florida Uniform Transfers to Minors Act (Chapter 710, Florida Statutes (1983)), with appellant, Wanda J. Snow, designated as the account custodian. Appellant and Byron separated, but before their divorce became final, Byron wrote two letters, instructing Shearson to close that account and another one in the name of Wanda Snow. This litigation involves only the custodial account.
According to the allegations in appellant's complaint, Byron forged appellant's signatures on the correspondence to Shearson and affixed a notary's seal; however, there was no notarial signature. According to appellant, Byron advised Shearson by these two letters to liquidate the custodial account and remit the proceeds to a Southeast Bank account. It is alleged that Byron later telephoned an account executive at Shearson and instructed him to send the proceeds to appellant in care of Byron's cousin in Connecticut. Byron apparently truthfully identified himself to Shearson over the telephone. Thereafter, Byron forged appellant's endorsement on the check, issued by Morgan Guaranty Trust Company of New York, representing the proceeds of the liquidated custodial account. Byron then allegedly deposited the forged check into a Southeast Bank account[1] and eventually applied all the proceeds, *240 more than $44,000.00, to his own personal use.
Appellant filed an amended complaint in June 1988 against Byron, Shearson and Southeast Bank. Shearson filed a motion to dismiss, arguing that the amended complaint failed to state a cause of action. More particularly, Shearson argued that appellant failed to allege sufficient ultimate facts to demonstrate a cognizable legal theory of recovery against Shearson, to demonstrate the breach of any duty owed appellant, or to demonstrate any conduct or failure to act on the part of Shearson that resulted in any damage to appellant. Shearson argued further that although breach of contract is alleged, appellant nevertheless failed to state a cause of action inasmuch as the terms or conditions of the contract between the parties, the conduct constituting the breach, satisfaction of (unspecified) conditions precedent, and consideration is not alleged. This motion was granted.
We are persuaded that the trial court erred in finding the amended complaint failed to state a cause of action against Shearson. Instead, we think appellant has adequately stated a cause of action for breach of contract.
When considering a motion to dismiss for failure to state a cause of action, a trial court must assume all of the allegations in the complaint are true, and must draw all reasonable inferences in favor of the pleader. Shahid v. Campbell, 552 So.2d 321 (Fla. 1st DCA 1989). In the amended complaint, appellant alleged that she had maintained a Shearson Daily Dividend account, as custodian for her minor son, with Shearson since 1981. We are of the view, and Shearson conceded during oral argument, that such an account contemplates a contract between the financial institution and the account owner. Therefore, the allegation that Shearson permitted funds to be drawn from the account by someone other than appellant, the account owner, states a prima facie cause of action for breach of contract.[2]
We find that the trial court also erred in granting Southeast's motion for summary judgment. A summary judgment should be granted "cautiously," Davis v. Lyall & Lyall Veterinarians, P.A., 506 So.2d 1072 (Fla. 5th DCA), rev. den., 513 So.2d 1062 (Fla. 1987), and reasonable inferences should be resolved against a movant for summary judgment, Moore v. Morris, 475 So.2d 666 (Fla. 1985), and Wills v. Sears, Roebuck and Co., 351 So.2d 29 (Fla. 1977). Summary judgment should not be granted "unless the facts are so crystallized that nothing remains but questions of law." Moore v. Morris, 475 So.2d at 668 (emphasis added), citing Shaffran v. Holness, 93 So.2d 94 (Fla. 1957).
Southeast Bank filed two motions for summary judgment. The first, based on a statute of limitations defense, was denied. The second motion was based solely on the grounds that the deposition and interrogatory testimony revealed that an "imposter" induced Shearson to issue the instrument at issue, and that under section 673.405, Florida Statutes, the endorsement of the instrument by the person named as payee was effective to negotiate the instrument *241 to Southeast.[3] The trial court granted summary judgment, stating that the facts, viewed in a light most favorable to appellant, show that Byron was acting as an "imposter" when he signed appellant's name on correspondence directed to Shearson and when he endorsed the check. Because the endorsement was legally sufficient and because there was no evidence that Southeast was on notice that the endorsement was forged, the trial court held, Southeast
enjoys the protection of Florida Statutes § 673.405, in view of the provisions of Florida Statutes § 673.117 which provides that an instrument payable to one in a fiduciary capacity may be treated as payable to the payee and may be negotiated, discharged or enforced by him, and further in view of Florida Statutes § 673.404 which provides that unauthorized signatures operate as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
As noted, the trial court ruled that Southeast was insulated from liability by operation of section 673.405(1)(a), Florida Statutes (1987), which provides that an endorsement by any person in the name of a named payee is effective if an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee (see footnote 3, supra). We find section 673.405(1)(a) inapplicable under the circumstances presented here. Appellant was not the drawer or maker of the instrument at issue, but was instead a payee suing the collecting bank for acceptance of a check bearing a forged endorsement of the payee. Here, as in Barnett Bank of Miami Beach v. Lipp, 364 So.2d 28 (Fla. 3d DCA 1978), where the payee of a check is suing a collecting bank, there is no policy reason for shifting the risk of loss to the payee, since as between appellant and Southeast, the bank was in a superior position to prevent the fraud from occurring.
The rationale of the U.C.C.'s approach to the problem of payment on a forged endorsement is clearly explained by the court in McAdam v. Dean Witter Reynolds, Inc., supra. Although in that case, as in Barnett, supra, the court dealt with the application of the so-called "faithless employee" provision, UCC section 3-405(1)(c) (section 673.405(1)(c), Florida Statutes), the rationale for the court's ruling applies with equal force to cases dealing with the subsection of the same statute containing the "imposter" provision (673.405(1)(a), Florida Statutes).
In the McAdam case, McAdam sought recovery of sums represented by checks drawn by his brokerage firm, Dean Witter, and made payable to him, but which were cashed by Midlantic National Bank/South (the collecting bank, not the drawee bank) pursuant to the forged endorsement of McAdam's signature by Murray, an account executive with Dean Witter. Midlantic argued that the "faithless employee" defense, section 3-405(1)(c) of the UCC, barred McAdam from recovering on the forged endorsements. The court rejected this contention, holding that section 3-405(1)(c) is "unavailable in a suit between a payee and an initial collecting bank at least when the bank converts checks with forged endorsements in violation of the good faith requirement of the UCC."[4]Id. at 759. *242 Briefly summarized, the McAdam opinion explained that the statute creates a limited exception to the general rule that the drawer of a check can usually avoid liability on a check with a forged endorsement by showing the unauthorized endorsement, in which event the depositary or initial collecting bank will likely suffer the loss. The statute (in McAdam, section 3-405(1)(c)) was designed to bar suits by drawer/employers against banks on forged instruments because normally the drawer/employer is in a better position to prevent such financial abuses by its employees.[5] Continuing, the McAdam court noted that the rationale for the section 3-405(1)(c) exception [and by the same reasoning, the 3-405(1)(a) exception] "does not easily extend to lawsuits brought by payees against initial collecting banks." Id. at 760. A payee, the court observed, unlike the drawer/employer [drawer/debtor], "is not in a better position than the bank to prevent such financial abuses." Id. Further, the court stated: "Importantly, as between the payee and an initial collecting bank, the bank is clearly in a better position both to prevent, or minimize, forgery losses through proper and careful banking procedures." Id.
Even if the imposter rule were applicable, which we find not to be the case, there is evidence to indicate that appellant's former husband, Cary Byron, did not act as an imposter, within the meaning of the statute, when he instructed Shearson to close the custodial account and send the funds to a Connecticut address. Byron argued below that he acted on the instructions of the appellant when he advised Shearson to liquidate the account. Furthermore, Shearson admittedly spoke with Byron during the process, and was therefore arguably on notice that it was Byron, not appellant, the account custodian, who ordered the closing of the account. The "imposter" rule does not apply where no impersonation took place. Broward Bank v. Commercial Bank of Hollywood, 547 So.2d 687 (Fla. 4th DCA 1989). The term "imposter", for purposes of the statute, refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. See, Uniform Commercial Code Comment 3-405(1)(a) Comment 2; Clients' Security Fund of Bar of New Jersey v. Allstate Insurance Co., 219 N.J. Super. 325, 530 A.2d 357 (N.J. Super.Ct.App.Div. 1987); Thieme v. The Seattle-First National Bank, 7 Wash. App. 845, 502 P.2d 1240 (1972).
As between appellant and Southeast, it clearly cannot be argued that Byron was acting as an imposter when he presented the check bearing appellant's forged signature to Southeast for deposit, since Byron purported to be no one but himself while he deposited the proceeds of the check upon which he had forged his wife's signature in a joint account in his and appellant's name. Whether or not the facts would justify an application of the "imposter" statute in determining liability for appellant's loss in an action between Shearson and Southeast is a matter we are not called upon to decide, since the issue is not before us in this appeal.
Contrary to the ruling of the trial court, we find no basis on the record before the trial court upon which Southeast, as a matter of law, can escape the consequences of its acceptance of the forged endorsement of appellant. Southeast's argument that it is somehow protected under the "imposter" rule, section 673.405(1)(a) in combination with section 673.404(2) (cited in the trial court's order) as a holder in due course is unavailing. See, Thieme v. The Seattle-First National Bank, supra (reliance upon imposter rule to attain status of holder in due course cannot be sustained where party depositing check did not claim to be the payee, but only the agent of the payee, and bank accepting check for deposit *243 could not become a holder in due course based on unauthorized endorsement.) We likewise find Southeast's, and the trial court's, reliance on section 673.117 to be misplaced.[6] The mere fact that the endorsement "Wanda J. Byron" would have been sufficient if made by her, without addition of the remainder of the language identifying her as custodian for her minor son's account (see footnote 1), in no way relieves Southeast of its liability for acceptance of a forged endorsement. Further, unlike the cases relied upon by Southeast on this point, Southeast did not accept the check for deposit in the account of the payee but instead, according to Southeast's pleadings and evidence, deposited it in an account in the names of "Cary Byron or Wanda J. Byron." Cf. Pan American Bank of Miami v. Goldszmidt, 364 So.2d 505 (Fla. 3d DCA 1978), cert. denied, 373 So.2d 458 (Fla. 1979); Southeast Bank, N.A. v. Weatherford, 506 So.2d 482 (Fla. 4th DCA), rev. denied, 515 So.2d 231 (Fla. 1987); Bradford Trust Co. v. Citibank, N.A., 90 A.D.2d 1004, 456 N.Y.S.2d 1017, 30 U.C.C.Rep.Serv. 237 (N.Y. Sup. Ct. 1980), aff'd, 60 N.Y.2d 868, 458 N.E.2d 820, 470 N.Y.S.2d 361 (N.Y. 1983). The facts and issues in these cases differ materially from the facts alleged and relied upon by appellant; and in any event, we conclude that Southeast has not established entitlement to a summary judgment because material issues of fact remain.
Under section 673.419(1)(c), an instrument is converted when it is paid on a forged endorsement. However, under subsection (3) of that section, a collecting bank who has "in good faith and in accordance with reasonable commercial standards" dealt with an instrument, or its proceeds, on behalf of one who was not the true owner is not liable for conversion beyond the amount of any proceeds remaining in its hands. Here, the undisputed evidence is that no proceeds of the forged check remain in Southeast's possession; therefore its liability or nonliability is dependent upon whether it dealt with the forged check "in good faith and in accordance with reasonable commercial standards" applicable to the business of banks such as Southeast. The assertion of good faith and reasonable commercial standards is an affirmative defense. Siegel Trading Co., Inc. v. Coral Ridge National Bank, 328 So.2d 476 (Fla. 4th DCA 1976). This defense involves factual issues to be determined by the trier of fact. Forys v. McLaughlin, 436 So.2d 280 (Fla. 5th DCA 1983).[7]
Accordingly, the dismissal of appellant's amended complaint against Shearson, and the summary judgment in favor of Southeast are REVERSED, and this cause is REMANDED for further proceedings.
ZEHMER and MINER, JJ., concur.
NOTES
[1] Appellant alleged in her amended complaint that she and Byron were divorced on June 19, 1984, prior to the time Byron deposited the check, and that she did not have an account at Southeast Bank. In its answer, Southeast alleged in stating an affirmative defense that the check was deposited in a joint account bearing the names of "Cary Byron or Wanda J. Byron." In her affidavit submitted in opposition to Southeast's motion for summary judgment, appellant stated that at the time the check was drawn or paid, she did not have an account in the Southeast Bank, and that Cary Byron was permitted by Southeast to deposit the check, which was made payable to "Mrs. Wanda J. Byron C/F Stephen Kosturik U/FL GTMA" into Cary Byron's "personal" account. A copy of the check attached to appellant's amended complaint indicates that it was endorsed simply "Wanda Byron".
[2] We reject as without merit Shearson's contention that action by appellant is foreclosed by the absence of a delivery of the check to her. Under the facts alleged, delivery to defendant Byron was a constructive delivery to appellant sufficient for her action against all defendants. Cf., City National Bank of Miami v. Wernick, 368 So.2d 934 (Fla. 3d DCA), cert. denied, 378 So.2d 350 (Fla. 1979); and see, McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 759 n. 14 (3d Cir.1990).
[3] Section 673.405 provides, in pertinent part:

(1) An endorsement by any person in the name of a named payee is effective if:
(a) An imposter by the use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee, or... .
[4] We note that the test of the collecting bank's liability, under the McAdam decision, is whether it has complied with the "good faith" requirements of the UCC. Additional references to this test appear in the McAdam opinion, particularly at page 761, in which the court observes that while no specific standard of care is set forth in section 3-405, "banks are obligated to act in good faith with respect to all their contracts and duties under the Code." Compare Barnett Bank of Miami Beach v. Lipp, supra, which we follow here (to be relieved of liability for acceptance of forged endorsement, bank must show "good faith" and that it followed "reasonable commercial standards"). 364 So.2d at 30; and see Travelers Indemnity Co. v. Center Bank, 202 Neb. 294, 275 N.W.2d 73 (1979) (liability is dependent on showing of actual or constructive notice, or that bank acted in commercially unreasonable manner).
[5] Paraphrasing, and applying the same reasoning to this case, the drawer/debtor is in a better position, through careful business practices, to prevent financial losses occasioned by the fraudulent acts of imposters.
[6] Section 673.117, Florida Statutes, provides, in part:

An instrument made payable to a named person with the addition of words describing him:
* * * * * *
(2) As any other fiduciary for a specified person is payable to the payee and may be negotiated, discharged or enforced by him.
[7] We note that Southeast failed to assert in its answer to the complaint an affirmative defense of "good faith and reasonable commercial practices" pursuant to section 673.419(3). The burden of ultimate persuasion on this issue nevertheless rests upon the appellant. See, Forys v. McLaughlin, supra.