**DOMINION BANK, N.A., Plaintiff,**

v.

**HOUSEHOLD BANK, F.S.B., Defendant.**

No. C2–92–877.

United States District Court, S.D. Ohio, E.D.

July 21, 1993.

Joseph A. Castrodale, Calfee, Halter & Griswold, Cleveland, OH, for plaintiff.

William G. Porter II, Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

This matter is now before the Court for consideration of cross-motions for summary judgment. Because the Court finds that no factual issues are unresolved and that the only dispute in this matter is a question of statutory interpretation, the Court's ruling on the cross-motions will dispose of this case.

### Background

The facts in this case are not in dispute. Robert Grossman held himself out as a financial advisor in Columbus, Ohio. Lawrence W. Pompili, D.D.S., is a Michigan resident who was a client of Robert Grossman. Dr. Pompili was the trustee of a profit sharing

plan. In January 1991, in accordance with his responsibilities as trustee of the profit sharing plan, Dr. Pompili sent Robert Grossman over $80,000 for the purchase of a single premium annuity policy from Fidelity Bankers' Life Insurance Company ("Fidelity").

Grossman completed the application for the annuity policy in Dr. Pompili's name. On the application, Grossman indicated that Dr. Pompili's mailing address was P.O. Box 14004, Columbus, Ohio. That post office box was held by Grossman and was never used by Dr. Pompili as his mailing address.

In March 1991, Grossman began corresponding with Fidelity by mail, using the name of Dr. Pompili and Dr. Pompili's personal stationery. Grossman completed a request form for the disbursement of $35,000 and forged Dr. Pompili's signature on the form. Grossman, in the guise of Dr. Pompili, instructed Fidelity to mail the check to the post office box in Columbus, Ohio. Following the same procedure, Grossman requested, in the name of Dr. Pompili, a second disbursement in April 1994 in the amount of $29,037.17. Again, Grossman, writing as Dr. Pompili, requested that the check be mailed to the Columbus post office box. Dr. Pompili was not aware of and did not approve any of Grossman's correspondence with Fidelity in his name or the requests for disbursement.

In response to the two requests for cash disbursement, Fidelity issued two checks to Dr. Pompili, in the amounts requested, and mailed them to the Columbus post office box. Grossman forged Dr. Pompili's signature to both checks and added an endorsement to Robert Grossman. Finally, he deposited the checks into a previously established account in his own name at Household Bank ("Household"). Household then presented the checks for payment to Dominion Bank ("Dominion") from Fidelity's account there.

When Grossman's scam was discovered, Dominion brought suit against Household, pursuant to Ohio Revised Code ("O.R.C.") § 1304.13 (U.C.C. 4–207), which states in pertinent part as follows:

(A) Each customer or collecting bank who obtains payment or acceptance of an item and each prior · customer and collecting bank warrants to the payor bank

or other payor who in good faith pays or accepts the item that:

(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title.

Based upon the allegations of its complaint and the absence of any factual dispute, Dominion has moved the Court for summary judgment arguing that the general rule set forth in O.R.C. § 1304.13 establishes Household's liability to Dominion for the amount paid to Household on the two checks forged by Grossman. Dominion further argues that none of the defenses enumerated by Household in its answer alters the application of the general rule that a collecting bank, Household, who obtains payment from a payor bank, Dominion, warrants good title to the payor bank.

Household opposes Dominion's motion and moves for summary judgment in its own right arguing for the application of the impostor exception of O.R.C. § 1303.41 (U.C.C. 3–405), which provides in pertinent part as follows:

(A) An endorsement by any person in the name of a named payee is effective if:

(1) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.

Household argues that Grossman's endorsements in the name of Dr. Pompili were effective for purposes of allowing Household to cash the checks without liability. Household asserts that Grossman used the mails to induce Fidelity, the maker or drawer of the checks, to issue the checks to Grossman in the name of Dr. Pompili. Dominion opposes Household's motion on the ground that Grossman was not an impostor.

The parties have framed the sole issue in this case as a question of whether the impostor exception of O.R.C. § 1303.41(A)(1) removes this case from the operation of the general rule of O.R.C. § 1304.13, which would clearly make Household liable to Dominion for the amount paid on the forged

checks. The Court determines that the issue is actually even narrower than that. The parties agree that Grossman, in the name of Dr. Pompili, used the mails to induce the maker or drawer of the checks, Fidelity, to issue the checks to Grossman in the name of the payee, Dr. Pompili. The only area of dispute concerns whether or not Grossman was an impostor. Accordingly, the Court will resolve the cross-motions and dispose of this case by answering the question of whether Grossman was an impostor for purposes of O.R.C. § 1303.41.

### Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In this case, the parties agree that no genuine factual issues exist and that one party or the other is entitled to judgment as a matter of law. The Court will enter judgment in this case depending upon its interpretation of the language of O.R.C. § 1303.41 and the application of that statute to the case at bar.

### Decision

■■ As a general rule, each person who obtains payment of a check from the drawee and each prior transferor warrants to the party who pays the check that he has good title to the instrument. *See, e.g., Perini Corporation v. First National Bank of Habersham County*, 553 F.2d 398, 404 (5th Cir. 1977). That warranty is known as the warranty of good title and is breached when the check contains a forged signature. *Id.* In such a case, as a general rule, the cause of action for breach of the warranty of good title travels back through the chain of collection to the party who took from the forger. *Id.* That general rule is embodied in Uniform Commercial Code ("U.C.C.") § 4–207, codified in Ohio as O.R.C. § 1304.13.

The rationale of U.C.C. § 4–207 is that the party who took from the forger is in the best position to have prevented the fraud. *See Girard Bank v. Mount Holly State Bank*, 474 F.Supp. 1225, 1231 (D.N.J.1979). That rationale may, in many cases, bear little relationship with reality. In fact, all of the parties in the chain of collection may have acted in a commercially reasonable manner and in complete good faith. Nevertheless, the U.C.C. provision satisfies the need for a rule for the assignment of liability among innocent parties. *See W.R. Grimshaw Company v. First National Bank and Trust of Tulsa*, 563 P.2d 117, 121 (Okla.1977). The rule recognizes that while none of the parties may have had any reason to suspect a fraud, the one who took from the forger was closest to the individual causing the loss and is presumed to have had the best opportunity to have prevented the loss. *Id.*

The fact that the general rule of U.C.C. § 4–207 presumes that all parties in the collection chain have acted innocently is illustrated by the use of the words "in good faith" in the language of the exception. Those words have given rise to an exception to the general rule of liability where one party in the chain has acted dishonestly or in a commercially unreasonable manner. *See, e.g., Hartford Accident & Indemnity Company v. First Pennsylvania Bank*, 859 F.2d 295, 297 (3rd Cir.1988). Neither party to this action has argued that bad faith alters the application of the general rule in this matter.

■■ Another exception to the general rule of liability is set forth in U.C.C. § 3–405, codified in Ohio as O.R.C. § 1303.41. That exception is known as the impostor rule and is the exception at issue in this case. The effect of U.C.C. § 3–405 is to make the forged signature effective as to the party who takes from the forger and all subsequent parties in the chain of collection. *See, e.g., Girard Bank*, 474 F.Supp. at 1232. Thus, the loss is shifted to the drawer. In this case, the drawer is Fidelity. *Id. See also Hinkle, d.b.a. Akron Novelty Company v. Cornwell Quality Tool Company*, 40 Ohio App.3d 162, 169, 532 N.E.2d 772, 779 (Summit Cty.1987). The loss is shifted to the

drawer, because the drawer is presumed to have been in the best position to have prevented the fraud. The rationale supporting the impostor rule is essentially the same as that supporting the general rule: the party with the closest contact with the forger ought to bear the responsibility for the loss occasioned by the forgery.

The parties in this matter agree that the facts of this case satisfy the requirements of the impostor rule, with one exception. Dominion argues that Grossman was not an impostor and that, therefore, regardless of the other circumstances of the case, the impostor rule does not come into play. Household, on the other hand, argues that Grossman was an impostor and that the impostor rule is a complete defense to Dominion's claim against Household.

In order for the impostor rule of U.C.C. § 3–405 to apply, the party perpetrating the fraudulent scheme must have been an impostor. The U.C.C. and the Ohio Revised Code fail to define the term "impostor." Accordingly, the Court must determine whether, in light of all of the facts that are agreed to be true, Grossman acted as an impostor.

■ An impostor is one who impersonates another either real or fictitious person. *See East Gadsden Bank v. First City National Bank*, 50 Ala.App. 576, 580, 281 So.2d 431 (Civ.App.1973). In order to trigger the application of the impostor rule, the impersonation must be of an identity. *Id.* In other words, the impostor rule does not apply in cases where the forger purports to be an agent for another when, in fact, no agency relationship exists. *Id.; see also Thornton & Company, Inc. v. Gwinnett Bank & Trust Company*, 151 Ga.App. 641, 642, 260 S.E.2d 765 (Gwinnett St.Ct.1979). Accordingly, had Grossman merely held himself out to be Dr. Pompili's authorized agent, the impostor rule would not apply.

■ A further distinction exists between impersonation and mere forgery. If a person, through simple forgery, induces a drawer or maker to issue a check to him in the name of another, his actions do not trigger the application of the impostor rule. *See Broward Bank v. Commercial Bank of Hol-*

*lywood*, 547 So.2d 687, 689 (Fla.Ct.App. 4th Dist.1989). Rather, the forger must have actively impersonated the payee by holding himself out to be that person. *Id.* Otherwise, the impostor rule would apply to virtually any forgery situation.

■ The parties agree that Grossman corresponded with Fidelity in the name of Dr. Pompili on numerous occasions and that Grossman used Dr. Pompili's personal stationery in correspondence with Fidelity. In fact, throughout the letters that have been made a part of the record in this matter are references by Grossman to himself as Dr. Pompili. The record is so replete with such references that there can be no argument that Grossman assumed the identity of Dr. Pompili in all of his communications with Fidelity and did not merely forge Dr. Pompili's signature.

■ Dominion argues against the application of the impostor rule in this case in spite of the fact that Grossman held himself out to be Dr. Pompili in his correspondence with Fidelity. Dominion argues that to support the application of the impostor rule, the impersonation must have taken place in person. Impersonation through the mail, Dominion argues, does not trigger the application of the impostor rule.

At least two courts that have considered the distinction between face-to-face and written impersonation have decided that the distinction does not warrant a difference in treatment under the law. *See Clients' Security Fund of the Bar of New Jersey v. Allstate Insurance Company*, 219 N.J.Super. 325, 330, 530 A.2d 357 (1987); *Fidelity and Deposit Co. of Maryland v. Chemical Bank of New York Trust Co.*, 62 Misc.2d 509, 309 N.Y.S.2d 266, 271 (New York Cty. 1970). The *Clients' Security* court stated that U.C.C. § 3–405 represents an abandonment of the pre-U.C.C. rule in New Jersey that "impostors who use the mail to defraud makers, rather than by face-to-face contact, were without power to transfer good title to the instrument." *Clients' Security*, 219 N.J.Super. at 330, 530 A.2d 357. The *Fidelity* court explained that the impostor rule originally developed as an exception in face-to-face

dealings but has been extended to "mail swindles." *Fidelity*, 62 Misc.2d 509, 309 N.Y.S.2d at 271. Accordingly, the case law that has addressed the distinction between in person impersonation and impersonation by mail does not favor Dominion's position.

The language of the statute itself includes impersonation by mail. The language explicitly includes inducement by mail as well as in other forms. That inclusion is consistent with the policy that supports the impostor rule. If the goal of the general rule and of the exception is to shift liability to the party with the greatest opportunity to have prevented the loss, then the distinction between impersonation by mail and in person is immaterial. Whether or not the drawer ever had face-to-face contact with the impersonator, the drawer is in the best position to have recognized the fraud and prevented the loss. Reading the statute in light of the policy supporting it, the Court determines that the impostor rule applies whether the impersonation is by mail or in person.

 Dominion also argues against the application of the impostor rule by noting that Grossman did not hold himself out to Household to be Dr. Pompili. In fact, in order to deposit the forged checks into his own account at Household, Grossman professed to be no one other than himself. Accordingly, Dominion argues that he can not be held to be an impostor. *See, e.g., W.R. Grimshaw Company*, 563 P.2d at 122. The impostor rule speaks of the inducement of the drawer or maker by impersonation, however, and not of impersonation to every member of the chain of collection. Clearly, Grossman impersonated Dr. Pompili in order to induce Fidelity to issue the checks. That is all that the impostor rule requires. Accordingly, the Court finds that Grossman was acting as an impostor as a matter of law and that all of the prerequisites to the application of the impostor rule, O.R.C. § 1303.41, are satisfied.

### Conclusion

For the reasons set forth herein, the Motion for Summary Judgment of Plaintiff Dominion Bank, N.A. is hereby **DENIED**. The Cross–Motion of Defendant Household Bank for Summary Judgment is hereby **GRANTED**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**