W. SHARP, Judge.
Lees, as personal representative of the estate of Paul E. Lees, appeals from a summary judgment entered against the estate. A review of this record convinces us that the record is insufficient to warrant granting summary judgment for Pierce. The judgment must therefore be reversed and this cause remanded for further proceedings.
On July 29,1971, Paul E. Lees received an executed promissory note in the sum of $250,000 from a corporate entity referred to as BRIC. Later that year, BRIC wanted to sell property located in Collier County, Florida (presently known as Big Cypress), to General Land Investment Corporation. A Trust Agreement was entered into on November 15, 1971, between BRIC, Pierce (the Trustee), and certain beneficiaries[1] who held a $100,000 mortgage on the property which BRIC wanted to sell to General Land. The purpose of the trust was to enable BRIC to sell the property free and clear and take back a purchase money mortgage and note from General Land.
The beneficiaries gave a satisfaction of the $100,000 mortgage and in return, received a new promissory note from BRIC in that sum with the General Land note and mortgage as collateral. The trust provided that all sums due BRIC under this mortgage would be paid to Pierce, as trustee, and directed him to pay 50 percent of the proceeds to BRIC and 50 percent to the beneficiaries named in the trust agreement. The trust agreement and satisfaction of mortgage were duly executed. On December 15, 1971, BRIC assigned the remaining 50 percent interest in the General Land note and mortgage to the beneficiaries and directed Pierce, as trustee, to pay 100 percent of the proceeds received thereunder to the beneficiaries until that obligation was satisfied.
BRIC and Lees executed an Assignment and Extension Agreement on September 30, 1972, which extended the payment date of Lees’ note until March 31, 1973. As consideration for this extension, the agreement contained a specific assignment to Lees of the “beneficial interest in that certain note ... issued by GENERAL LAND INVESTMENT CORP.” This assignment was subject only to the “first assignment” on the $100,000 debt owed the beneficiaries under the trust agreement. It further provided that after the beneficiaries and Lees were paid, and upon request from BRIC, Pierce was to assign the note and mortgage back to BRIC. By 1974 or 1975, all of the beneficiaries named in the trust agreement had been repaid in full, and Lees began receiving the proceeds from the General Land note and mortgage.
General Land made individual and bulk sales of lots covered by the note and mortgage. The lots sold in bulk were released from General Land’s master mortgage conditioned upon an assignment of the new mortgages to Pierce. In 1977 three entities that had purchased lots in bulk defaulted, and Pierce brought foreclosure proceedings against them, hiring himself as attorney to represent the trust. He then became the successful bidder at the foreclosure sale of these properties, purchasing them for the amount of the judgment, which included his attorneys fees.
It appears that at some point, BRIC became insolvent.[2] In 1984 Pierce declared a default against General Land, but took no action to foreclose the property. Subsequently the land covered by General Land’s note and mortgage was condemned by the United States government. General Land hired an attorney to represent it in the condemnation proceedings, and Pierce again hired himself as attorney to represent the trust.
All of the monies received by Pierce as a result of these condemnation proceedings were allocated by him to himself or others in payment of attorneys fees and costs. Although Lees made demand for payment on the note, Pierce rejected that demand, and *841 Lees received nothing although it appears that at least $100,000 was still owed to him on the BRIO note. Lees brought suit against Pierce on several theories. The one involved in this proceeding is whether Pierce breached a duty of good faith owed to Lees and whether the records showed there were genuine issues of material fact concerning this issue which precluded summary judgment. Pierce concedes on appeal that his motion for summary judgment rests solely on a factual determination of his good faith.
This appeal can only be affirmed if we agree the record establishes there is no material fact or controversy concerning Pierce’s good faith in paying himself costs and attorney’s fees. We think Pierce’s good faith was controverted here and put at issue. Thus, summary judgment was improvidently entered for Pierce.
The attorney who represented General Land in the condemnation proceeding stated in his affidavit that Pierce’s actions were not in good faith, that Pierce contributed little if anything to the outcome of the case, and that his efforts were duplicitous and unnecessary. Pierce’s former secretary gave testimony that Pierce billed her time and the time of other secretaries as attorney time. The sole evidence of Pierce’s good faith was his own statement that he did act in good faith. Based on this record, we cannot say that there was no material issue of fact as to Pierce’s good faith.[3] Good faith is generally an issue of fact which precludes summary judgment. Lassiter v. Resolution Trust Corp., 610 So.2d 531 (Fla. 5th DCA 1992); Snow v. Byron, 580 So.2d 238 (Fla. 1st DCA 1991); Barnes v. Camden Realty, Inc., 578 So.2d 20 (Fla. 1st DCA 1991); Bruce v. O’Neill, 445 So.2d 379 (Fla. 4th DCA 1984); Brickell v. Hollywood, Inc., 436 So.2d 276 (Fla. 4th DCA 1983); Pledger v. Burnup & Sims, Inc., 432 So.2d 1323 (Fla. 4th 1983). The burden of proof to show that there are no triable issues and no genuine issue of material fact is on the moving party in a motion for summary judgment. Holl v. Talcott, 191 So.2d 40 (Fla.1966).
REVERSED AND REMANDED.
COBB and GRIFFIN, JJ., concur.

. The beneficiaries named in the trust agreement did not include Lees.

. We are unable to ascertain, from this record, whether BRIC declared bankruptcy or even if it was dissolved.

. This opinion does not address the merits of the case nor other matters which may be involved, such as whether the trust in fact continued to be in existence at the time Pierce acted as a "trustee” in hiring himself to represent the trust.